RONALD A. AND CAROL D. NOLTE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nolte v. Commissioner
Docket No. 953-86
United States Tax Court
T.C. Memo 1995-57; 1995 Tax Ct. Memo LEXIS 57; 69 T.C.M. (CCH) 1828; February 1, 1995, Filed *57 An order will be issued denying petitioner's Motions For Leave to Amend Petition and the Court's Order to Show Cause will be made absolute and a decision will be entered for respondent. For petitioners: Avram Salkin. For the respondent: Roger Kave. DAWSON, NAMEROFF DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Larry L. Nameroff pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE NAMEROFF, Special Trial Judge: This case is before us on the Court's Order to Show Cause why a decision should not be entered in this case. Respondent determined deficiencies in petitioners' 1980 and 1981 Federal income taxes in the respective amounts of *58 $ 13,369.76 and $ 55,638.54. Respondent also determined that petitioners are liable for an increased rate of interest attributable to a tax-motivated transaction under section 6621(c). In the Answer to the petition, respondent asserted that petitioners were liable for the additions to tax for negligence pursuant to section 6653(a) for 1980 and section 6653(a)(1) and (2) for 1981. This case involves adjustments flowing from petitioners' participation in commodity straddle transactions through the commodities brokerage firm F.G. Hunter & Associates, Inc. (hereinafter referred to as F.G. Hunter). Petitioners recorded the results of their straddle trading through F.G. Hunter on their 1980 and 1981 tax returns as follows: Explanation
1980 1981
Ordinary loss from cancellation
($ 37,791.28)
($ 70,356.93) of Gold Futures Contracts Short-term capital loss from sale
(8,500.00)  of Gold Futures Contracts Long-term capital gains from sale
$ 111,760.00 of Gold Futures Contracts In the notice of deficiency dated November 25, 1985, respondent disallowed the claimed ordinary losses described above and further determined that petitioners had a net short term capital *59 gain of $ 111,760 and no long term capital gain. In Ewing v. Commissioner, 91 T.C. 396 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991), the test case for the F.G. Hunter transactions, this Court found that the transactions were not primarily for profit, and, therefore, alleged losses could not be deducted as ordinary losses under section 108(a) of the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494 (hereinafter section 108(a)). We also found, however, that the taxpayers in Ewing were entitled to offset their losses against their gains pursuant to section 108(c) of DEFRA, as amended by section 1808(d) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2817 (hereinafter section 108(c)). For purposes of this proceeding, petitioners concede that all the losses incurred by them relating to the disposition of F.G. Hunter commodity future contracts were neither incurred in a trade or business nor incurred in a transaction entered into for profit. On December 13, 1993, respondent filed a Motion For Order to Show Cause why a decision should not be entered against petitioners based *60 upon the opinion in Ewing v. Commissioner, supra. The Court granted respondent's motion, and ordered that petitioners show cause in writing why a decision should not be entered in this case as set forth in respondent's motion. [2] On January 13, 1994, petitioners filed a Response to Order to Show Cause alleging that application of the doctrine of equitable estoppel bars respondent from pursuing this matter. Additionally, petitioners contend that, in any event, they are entitled to a tax deduction in 1981 for their net out-of-pocket loss pursuant to the provisions of section 108(c). A hearing was held on these matters on October 17, 1994, at which time petitioners' counsel suggested that a further defense is being considered; viz the running of the period of limitations for assessment for 1980. *61 Subsequently, on November 7, 1994, petitioners filed a Motion For Leave to Amend the Petition (the motion for leave) and lodged the proposed amendment in which petitioners seek to raise, for the first time, the defense that the statute of limitations prohibits any adjustment for 1980. Petitioners contend that their records reflect that they never executed a Form 872-A, Special Consent to Extend the Time to Assess Tax (Form 872-A) extending the period of limitations for 1980. Petitioners further contend that because the notice of deficiency was issued more than 3 years after the filing of the 1980 tax return, respondent is barred by the statute of limitations from assessing tax. [3]
*62 Respondent filed an Objection to the motion for leave, contending that 8 years constitutes undue delay for the filing of the motion for leave, especially in view of the fact that petitioners have been represented by counsel since the filing of their petition herein. Respondent further contends that to allow petitioners to amend their petition at this late date would unduly prejudice her. Respondent admits that her files do not contain an executed Form 872-A. However, respondent alleges that the administrative file contains secondary evidence that a Form 872-A was, in fact, executed. We will first consider whether to permit petitioners to amend their petition to raise the statute of limitations issue, for granting of the motion for leave would necessitate further proceedings. If we deny petitioners' motion for leave, we will then consider: (1) Whether respondent should be equitably estopped from having the proposed decision entered in this case; if not, (2) whether, pursuant to section 108(c), petitioners are entitled to a net out-of-pocket loss deduction in the amount of $ 4,888.21 from their F.G. Hunter straddle transactions. Some of the facts have been stipulated and are *63 so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of the filing of the petition herein, petitioners resided in Long Beach, California. Petitioner Ronald A. Nolte (hereinafter referred to as petitioner) is an attorney, duly licensed to practice in the State of California. At all times relevant herein, petitioner was employed as an attorney by the William Morris Agency, although he is not a tax attorney. Petitioner's Motion for Leave to Amend Petition
Rule 41(a) provides that, "A party may amend a pleading once as a matter of course at any time before a responsive pleading is served. * * * Otherwise a party may amend his pleading only by leave of Court or by written consent of the adverse party". Respondent served the answer in this case on April 3, 1986. Therefore, since respondent objects to the proposed amendment, petitioner requires leave of the Court to amend the petition. Rule 41(a) further provides that leave to amend "shall be given freely when justice so requires." This Court has looked to cases decided under Rule 15(a) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) for guidance on the interpretation *64 of Rule 41(a). Kramer v. Commissioner, 89 T.C. 1081, 1084-1985 (1987). Like Rule 41(a), Fed. R. Civ. P. 15(a) mandates that leave to amend "shall be freely given when justice so requires." Although the rule reflects a liberal attitude toward amendment, the leave petitioners seek is a not a matter of right, but is within the discretion of the Court. In Foman v. Davis, 371 U.S. 178, 182 (1962), the Supreme Court stated that leave to amend may be inappropriate in cases where there is: any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. * * *
Accordingly, an untimely amendment may properly be denied where there is no excuse for delay and there is prejudice or substantial inconvenience to the adverse party. See Manzoli v. Commissioner, T.C. Memo. 1989-94, affd. 904 F.2d 101 (1st Cir. 1990). As stated earlier, the *65 notice of deficiency was dated November 25, 1985. The petition was filed on January 10, 1986. A notice setting this case for trial on February 29, 1988, was issued by the Court on September 29, 1987. Thereafter, the parties filed a joint motion to continue, contending that this case was similar to the test cases currently under consideration by the Court, and that the final disposition of the test cases may result in a resolution of this case without trial or at least materially shorten the required trial time. The motion to continue generally was granted. Nothing further occurred in this case until the filing of respondent's motion to show cause described above. At no time was the Court ever advised of a possible statute of limitations defense, until the matter was suggested by petitioners' counsel at the hearing. Under these circumstances, we are not persuaded that justice would be served by the allowance of the proposed amendment. Petitioners, who have always been represented by counsel since the filing of their petition, have not set forth any convincing reason as to the delay for the filing of the motion for leave. Moreover, petitioners' proposed amendment would substantially *66 inconvenience and unfairly prejudice respondent. Amendment of the petition would require respondent to locate witnesses to testify about events occurring more than 8 years ago regarding the alleged execution of the Form 872-A for 1980. Accordingly, we will deny petitioners' motion for leave to amend their petition. Equitable Estoppel
We will therefore consider whether respondent should be equitably estopped from pursuing the deficiency resulting herein (and, presumably, recognizing the overpayment). On April 14, 1986, respondent assessed the deficiencies determined in the notice of deficiency sent to petitioners for 1980 and 1981. Respondent admits that this assessment was erroneous because petitioners had timely filed a petition with this Court for the taxable years 1980 and 1981. Subsequent to the erroneous assessment, respondent issued several billing statements to petitioners. Upon receipt of respondent's April 14, 1986, billing statement, petitioner brought the billing statement to the attention of his counsel, who informed petitioner that because he had a pending Tax Court case, the bill was issued in error and would be rectified. On April 24, 1986, petitioners' *67 counsel wrote respondent a letter requesting an abatement of the erroneous assessment due to the pending Tax Court case involving the years of the erroneous assessment. A copy of the April 24, 1986, letter was sent to petitioners. However, petitioners continued to receive billing statements from respondent relating to the 1980 and 1981 tax years. In response to his inquiries, petitioners' counsel continued to tell petitioner that the bills were erroneous, that they should not be paid, and that steps were being taken to rectify the situation. Again, on August 25, 1986, petitioners' counsel wrote respondent a letter informing respondent that her invoice to petitioners, dated July 28, 1986, was incorrect because petitioners had a pending Tax Court case. A copy of the August 25, 1986, letter was sent to petitioners. On November 10, 1986, Catherine R. Roberts, a paralegal in petitioners' counsel's office, wrote respondent a letter stating, in part, as follows: Enclosed please find your Statements of Tax Due dated October 21, 1986 for the taxable years(s) 1980 & 1981. Please be advised that a timely Petition was filed with the United States Tax Court (Docket No. 953-86) on January *68 10, 1986 covering tax years 1980 and 1981. Please abate the assessment immediately. Your prompt attention in this matter will be deeply appreciated.
A copy of this correspondence was sent to petitioners. In response to the November 10, 1986, letter, respondent's agent, B. Lewis, Chief, Inquiry and Support Section, on December 2, 1986, wrote petitioners a letter (the December letter) stating, in part: Thank you for your inquiry of Nov. 10, 1986. We have reviewed your 1980 and 1981 account and have found that the tax court decision has been posted by our district office and the balance on both years is paid in full.
After receiving respondent's December letter, petitioners neither contacted their counsel regarding the letter nor forwarded them a copy of the letter. During the period from December 2, 1986, through March 1993, petitioners continued to receive letters from their counsel relating to the status of the F.G. Hunter litigation. Moreover, had petitioners contacted their counsel regarding the December letter, they would have been advised that no decision had been entered by this Court in this case. Petitioners now contend that, based upon the receipt of *69 the December letter, they believed they had no further tax liability for 1980 and 1981 and that they were not aware that the proceedings in this case were continuing until they received proposed decision documents from respondent on or around March 23, 1993. Petitioner testified that, although he continued to receive status reports and other correspondence from his counsel regarding the test cases, he ignored them, believing that his case was over and that he merely had not been removed from some mailing list. Thus, petitioners contend that, based on their reliance on respondent's December letter, they did not pay their asserted tax liability for the subject years, thereby incurring additional interest expense from December 1986. Moreover, petitioners further contend that they suffered a detriment in that they lost the ability to obtain a deduction for the payment of interest that could have been obtained had they paid the interest prior to December 31, 1986. Thus, petitioners contend that respondent should be estopped from obtaining a decision in this case against them. "Equitable estoppel is a judicial doctrine that 'precludes a party from denying his own acts or representations *70 which induced another to act to his detriment.'" Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992) (quoting Graff v. Commissioner, 74 T.C. 743, 761 (1980), affd. 673 F.2d 784 (5th Cir. 1982)). This Court has recognized that estoppel is applied against the Commissioner "with the utmost caution and restraint." Hofstetter v. Commissioner, supra at 700 (quoting Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977)); Kronish v. Commissioner, 90 T.C. 684, 695 (1988); Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987); Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977). Moreover, the Supreme Court has stated that "the Government may not be estopped on the same terms as any other litigant." Heckler v. Community Health Servs. Inc., 467 U.S. 51, 60 (1984). Although refusing to adopt a "flat rule" prohibiting estoppel claims against the *71 government in all circumstances, the Supreme Court has noted that it has "reversed every finding of estoppel [against the government]" that has come before it. Office of Personnel Management v. Richmond, 496 U.S. 414, 422 (1990). The Supreme Court has made it clear that "however heavy the burden might be when an estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present." Heckler v. Community Health Services, supra at 61; see also Bokum v. Commissioner, 992 F.2d 1136, 1141 (11th Cir. 1993), affg. T.C. Memo 1990-21; Yerger v. Robertson, 981 F.2d 460, 466 (9th Cir. 1992); Kennedy v. United States, 965 F.2d 413, 417 (7th Cir. 1992). The traditional elements necessary to invoke equitable estoppel are: (1) The existence of a false representation or wrongful misleading silence by the party against whom estoppel is invoked; (2) the error must originate in a statement of fact, not in an opinion *72 or statement of law; (3) the party claiming the benefits of estoppel must be ignorant of the true facts; (4) the party claiming the benefits of estoppel must reasonably rely on the other party's misrepresentation or wrongful misleading silence; and (5) the party claiming the benefits of estoppel must be adversely affected by the other party's misrepresentation or wrongful misleading silence. Estate of Emerson v. Commissioner, supra at 617-618. If any one of these elements is not present, equitable estoppel is not appropriate. Moreover, the United States Court of Appeals for the Ninth Circuit, to which this case is appealable, imposes two additional elements that the party seeking estoppel must overcome. The party must show that the Government's actions amounted to "affirmative misconduct" going beyond mere negligence and that the Government's wrongful conduct threatens to work a serious injustice. Jaa v. INS, 779 F.2d 569, 572 (9th Cir. 1986)[4]
*73 We will assume, for purposes of this case, that respondent made erroneous statements of fact that the "tax court decision has been posted" and that "the balance on both years is paid in full." But petitioners have failed to prove the other elements of equitable estoppel. First of all, we question that petitioners believed that the representations in respondent's December letter were accurate. That may have been an initial reaction, but they were receiving communications from their counsel as to the status of the test cases. Their counsel received notice setting the case for trial in 1988, and represented to the Court that the pendency of the test cases warranted continuance of the trial. In addition, petitioners knew that nothing had been paid on their income tax accounts for 1980 and 1981 subsequent to the receipt of the notice of deficiency. Moreover, even if we believed that petitioners did not personally have knowledge that a decision had not been "posted" in their case, petitioners' counsel did. Their counsel, as stipulated by the parties, was aware, at the time respondent sent her December letter to petitioners, that no decision had been entered by the Tax Court. A simple *74 phone call from petitioners to their counsel would have cleared up any concern. Secondly, petitioners have failed to prove that their alleged reliance on respondent's agent's letter was reasonable. Petitioners were represented by counsel throughout the handling of this case. See Garland v. Commissioner, T.C. Memo. 1993-190. We find it unlikely that petitioners would not have advised their counsel of the letter or questioned its accuracy in light of the fact that their counsel had continuously advised them that respondent's assessment was erroneous because their case was still pending in this Court. Thirdly, petitioners have not established that they suffered any significant detriment as a result of respondent's misstatement. Petitioners allege that payment of an income tax deficiency for 1980 and accumulated interest constitutes a detriment. However, petitioners would owe this deficiency whether or not respondent made the misstatement. See Kennedy v. United States, supra at 418. Moreover, the accumulation of interest is not a "detriment" in the case of underpaid taxes of a taxpayer who has benefited, for the *75 term of the underpayment, from the interest free use of funds legally due and owing the Commissioner. Estate of Bennett v. Commissioner, T.C. Memo. 1989-681, affd. without published opinion 935 F.2d 1285 (4th Cir. 1991). Other than petitioner's self-serving testimony, there is no evidence that petitioners were going to pay in 1986 the asserted deficiencies or interest in order to take an income tax deduction. Certainly, they had not taken any such steps upon receipt of the revenue agent's report in 1984 (for substantially smaller deficiencies) or upon receipt of the notice of deficiency in 1985. We think this "lost opportunity" argument is another last ditch attempt to avoid payment of their income tax liability. Finally, this case differs substantially from Schuster v. Commissioner, 312 F.2d 311 (9th Cir. 1962), affg. in part 32 T.C. 998 (1959) and revg. in part First Western Bank & Trust Co. v. Commissioner, 32 T.C. 1017 (1959), upon which petitioners rely. In Schuster v. Commissioner, supra at 318, *76 the Court of Appeals held that the IRS was not estopped from asserting liability for unpaid estate taxes against a transferee, notwithstanding a prior erroneous determination of the amount of estate taxes due. However, the Court of Appeals also held that the liability could not be asserted against the bank trustee that distributed the property in reliance on the Commissioner's erroneous determination. In so finding, the Court of Appeals for the Ninth Circuit stated: We are unaware of any particular detriment sustained by Schuster in reliance on the Commissioner's mistake, for she did not materially change her position in reliance on his earlier determination. But the Bank has been greatly prejudiced because of the Commissioner's mistake. After it was informed that the trust corpus was not includable in the decedent's gross estate, it distributed the corpus to the beneficiary, and thus no longer retains the property which was the subject of the deficiency. Therefore, any liability of the Bank would have to come out of its own pocket, not the corpus of the trust. This would be grossly unfair to the Bank, especially because it never enjoyed the use of the corpus but merely acted *77 in the capacity of a trustee. It is difficult to see what additional action the Bank might have taken to protect itself from the liability, faced with the beneficiary's demand for the corpus and the Commissioner's determination that it was not taxable. It is our conclusion that the Bank's equitable interest is so compelling, and the loss which it would sustain so unwarrantable, as to justify the application of the estoppel doctrine against the Commissioner. [Id.]
In the instant case petitioners had the benefit of the use of the money, whereas in Schuster the bank was merely the trustee. Moreover, petitioners, unlike the bank, could have taken further actions, such as questioning the accuracy of respondent's December letter, especially in light of their prior conversations with their counsel regarding their pending tax case, as well as their continued receipt of F.G. Hunter litigation status reports from their counsel. It is not unfair to require petitioners to pay their proper tax liabilities. Accordingly, in view of the foregoing reasons, we hold that the doctrine of equitable estoppel does not apply against respondent. Section 108(c)
Petitioners contend *78 that, pursuant to the provisions of section 108(c), they are entitled to a deduction for their net out-of-pocket loss, regardless of whether their transactions were entered into for profit. Respondent contends that section 108(c) only allows petitioners to offset their straddle transaction losses against their straddle transaction gains. Thus, respondent contends that if the taxpayers have a net gain, the gain is taxable as income under section 61, and, if the result of the combining of gains and losses is a net loss, the net loss is not allowed as a deduction, because section 165(c) prevents taxpayers from claiming losses which are not incurred in a trade or business or for profit. We agree with respondent. Section 108[5] had, as its principal purpose, rejection of the position respondent was taking at the time of its enactment, namely, that a straddle loss could not be deducted until there was a closed and completed transaction; i.e., the long leg was closed and the net amount realized by the taxpayer was determined -- a position that this Court rejected in Smith v. Commissioner, 78 T.C. 350 (1982), but which respondent continued to take. *79 See Alling v. Commissioner, 102 T.C. 323, 331 (1994); H. Rept. 98-861 (1984), 1984-3 C.B. (Vol.2) 1, 170-171. By enacting section 108, Congress made clear that a pre-ERTA (Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172) loss was deductible in the year in which the short leg of a straddle was closed provided it was incurred in a trade or business or in a transaction entered into for profit. See sec. 108(a); Alling v. Commissioner, supra at 331-332. At the same time, Congress provided, in section 108(c), that a taxpayer, who could not obtain the benefit of such a loss under section 108(a), was nevertheless entitled to use the loss to offset the gain on the closing of the long leg of the straddle. Thus, Congress designed section 108 as a relief measure to assure taxpayers that only the net economic result would be taken into account so that respondent could not obtain a windfall by denying the losses and then taxing the gains resulting from the closing of a straddle. Ailing v. Commissioner, supra at 332. *80 Moreover, section 1.165-13T, Q&A-3, Temporary Income Tax Regs., 49 Fed. Reg. 33445 (Aug. 23, 1984), provides as follows: Q-3. If a loss is disallowed in a taxable year (year 1) because the transaction was not entered into for profit, is the entire gain from the straddle occurring in a later taxable year taxed? A-3. No. Under section 108(c) of the Act the taxpayer is allowed to offset the gain in the subsequent taxable year by the amount of loss (including expenses) disallowed in year 1.
Thus, in cases subject to section 108 in which a loss is disallowed in a taxable year (year 1) because the transaction did not satisfy the "entered into for profit" test, section 108(c) allows the taxpayer to offset gain occurring in a later year by the amount of loss disallowed in year 1. See T.D. 7698, 1984-2 C.B. 51. Based on the language of section 108(c) and section 1.165-13T, Q&A-3, Temporary Income Tax Regs., 49 Fed. Reg. 33445 (Aug. 23, 1984), we think it is clear that petitioners are only entitled to offset their gains by the amount of the losses, which is reflected in respondent's recomputation *81 for 1981. Accordingly, petitioners are not entitled to an additional deduction for their "net" loss in excess of their straddle gains. To reflect the foregoing, An order will be issued denying petitioner's Motions For Leave to Amend Petition and the Court's Order to Show Cause will be made absolute and a decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent asks the Court to enter a decision for a deficiency of $ 13,369.76 for 1980 and for an overpayment for 1981 in the amount of $ 1,823.47; respondent has conceded the additions to tax for negligence for 1980 and 1981 and the interest under sec. 6621(c) for 1981.↩
3. On Nov. 25, 1985, respondent issued a notice of deficiency to petitioners for the taxable years 1980 and 1981. Petitioners filed a petition with this Court on Jan. 10, 1986. Since the filing of petitioners' petition, petitioners have been represented by the law firm of Hochman, Salkin & DeRoy (hereinafter referred to as petitioners' counsel).↩
4. A corollary principal to these doctrines is that respondent, the Commissioner of Internal Revenue, is not bound by erroneous acts or statements of her agents. Equitable estoppel does not bar the Commissioner from correcting a mistake of law, Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 183-184 (1957), "even where a taxpayer may have relied to his detriment on the Commissioner's mistake." Dixon v. United States, 381 U.S. 68, 72-73↩ (1965).
5. Section 108 of the Deficit Reduction Act of 1984, as amended by section 1808 of the Tax Reform Act of 1986 Pub. L. 99-514, 100 Stat. 2817, provides, in pertinent part, as follows: (a) General Rule. -- For purposes of the Internal Revenue Code of 1954, in the case of any disposition of 1 or more positions -- (1) which were entered into before 1982 and form part of a straddle, and (2) to which the amendments made by title V of the Economic Recovery Tax Act of 1981 do not apply,
any loss from such disposition shall be allowed for the taxable year of the disposition if such loss is incurred in a trade or business, or if such loss is incurred in a transaction entered into for profit though not connected with a trade or business. (b) Loss Incurred In a Trade or Business. -- For purposes of subsection (a), any loss incurred by a commodities dealer in the trading of commodities shall be treated as a loss incurred in a trade or business. (c) Net Loss Allowed. -- If any loss with respect to a position described in paragraphs (1) and (2) of subsection (a) is not allowable as a deduction (after applying subsections (a) and (b)), such loss shall be allowed in determining the gain or loss from dispositions of other positions in the straddle to the extent required to accurately reflect the taxpayer's net gain or loss from all positions in such straddle.7↩