120 T.C. No. 7


UNITED STATES TAX COURT


JAMES C. AND KATHERINE WILKINS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10704-00.           Filed February 26, 2003.


     Ps claimed a refund of $80,000 on their 1998
Federal income tax return attributable to "black taxes"
or so-called slavery reparations.

     <u>Held</u>:  The Internal Revenue Code does not provide
a deduction, credit, or any other allowance for slavery
reparations.

     <u>Held further</u>:  The doctrine of equitable estoppel
is not a bar to R's determination in this matter.
Therefore, R's Motion for Summary Judgment shall be
granted.


James C. and Katherine Wilkins, pro sese.

<u>Monica J. Miller</u>, for respondent.

OPINION

DAWSON, Judge:  This case was assigned to Chief Special Trial Judge Peter J. Panuthos, pursuant to the provisions of section 7443A(b)(5) and Rules 180, 181, and 183.[1]  The Court agrees with and adopts the opinion of the Chief Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

PANUTHOS, Chief Special Trial Judge:  This matter is before the Court on respondent's Motion for Summary Judgment, filed pursuant to Rule 121.  As explained in detail below, we shall grant respondent's motion.

Background

In February 1999, petitioners filed a Form 1040, U.S. Individual Income Tax Return, for the taxable year 1998, on which they reported wages of $22,379.85, total tax of $1,076, and tax withholding of $2,388.  Petitioners' tax return included two Forms 2439, Notice to Shareholder of Undistributed Long-Term Capital Gains.  The Forms 2439 stated that petitioners were shareholders of a regulated investment company (RIC) or real estate investment trust (REIT).[2]  The Forms 2439 identified the

---

[1]  Section references are to the Internal Revenue Code, as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Sec. 852(b)(1) and (3)(A) provides that tax will be
(continued...)

investment entity as "black investment taxes" and listed the amount of tax paid by the entity on petitioners' behalf as $80,000.00. Petitioners entered $80,000.00 on Form 1040, line 63 (Other payments), and claimed a refund on a total overpayment of $81,312. Respondent processed the tax return and promptly issued to petitioners a refund check in the amount of $81,312.

On August 9, 2000, respondent sent a notice of deficiency to petitioners for the taxable year 1998 which stated in pertinent part:

> It is determined that the amount reported as Other Payments on your tax return for the taxable year 1998 is not allowable because there is no provision in the Internal Revenue Code for a refundable tax credit for the payment of reparation for slavery. Therefore, your allowable Other Payments is $0.00 rather than $80,000.00 as shown on your return. Accordingly, your tax liability is increased by $80,000.00 for the tax year 1998.

Petitioners filed a timely (imperfect) petition and an amended petition challenging the notice of deficiency described above.[3] The amended petition states in pertinent part: "We request the

---

[2](...continued) imposed on the taxable income and capital gains of a regulated investment company (RIC). Sec. 852(b)(3)(D)(i) provides that the RIC's shareholders "shall include, in computing his long-term capital gains in his return * * * such amount as the * * * [RIC] shall designate". Sec. 852(b)(3)(D)(ii) provides that such shareholder "shall be deemed to have paid * * * the tax imposed" under sec. 852(b)(3)(A) and the shareholder shall be allowed a "credit or refund, as the case may be, for the tax so deemed to have been paid by him."

[3] At the time the petition was filed, petitioners resided in Satellite Beach, Florida.

total amounts plus any penalties be dropped, due to negligence of the I.R.S."[4]  Respondent filed an answer to the amended petition.[5]

As indicated, respondent moves for summary judgment. Respondent avers that "Although there have been several initiatives in Congress to study reparations proposals for African-Americans, there is currently no provision in the tax law that allows African-Americans to claim black investment taxes or any type of tax credit or refund related to slavery reparations." Respondent also asserts that he has taken steps to combat the "slavery reparation scam".

Petitioners filed an Objection to respondent's motion. Petitioners contend that respondent's motion should be denied because respondent was "negligent in informing the public specifically African-Americans of * * * [the slavery reparations]

---

[4]  Respondent did not determine that petitioners are liable for any addition to tax or penalty for the taxable year 1998.

[5]  Respondent initially filed a motion to dismiss for lack of jurisdiction, asserting that the notice of deficiency was invalid on the ground that respondent did not determine a deficiency in tax because sec. 6201(a)(3) authorized the immediate assessment of the $80,000 erroneously refunded to petitioners.  When petitioners failed to file an objection, the Court granted respondent's motion to dismiss.  Respondent later moved to vacate the Court's order of dismissal for lack of jurisdiction, asserting that the erroneous refund issued to petitioners is subject to the normal deficiency procedures set forth in secs. 6211-6216.  The Court granted the motion to vacate, concluding that respondent determined a deficiency in petitioners' Federal income tax.

scam."  Petitioners assert that, when they first heard about claims for slavery reparations, they researched the Internal Revenue Service's website and found no mention of a scam relating to the matter.  They also contend that they first learned that their slavery reparations claim was not legitimate when they were interviewed by an IRS special agent in July 1999.  They maintain that the special agent informed them that they did not need to repay the $80,000 in question, but that he would appreciate their assistance in prosecuting the promoter of the scam.

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials.  See Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).  The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner

most favorable to the party opposing summary judgment.  See

Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v.

Commissioner, 79 T.C. 340, 344 (1982).

Based on our review of the record, we are satisfied that

there is no genuine issue as to any material fact and that

summary judgment may be rendered in respondent's favor as a

matter of law.

We begin with the well-settled principle that tax deductions

are a matter of legislative grace, and taxpayers must show that

they come squarely within the terms of the law conferring the

benefit sought.  See Rule 142(a); INDOPCO, Inc. v. Commissioner,

503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292

U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115

(1933).  Petitioners concede that they did not make "other

payments" of $80,000 during 1998, and, therefore, they were not

entitled the refund claimed on their return.  The Internal

Revenue Code simply does not provide a tax deduction, credit, or

other allowance for slavery reparations.

For purposes of the pending motion we assume that

petitioners' assertions regarding the IRS website and their

interview with the special agent are true.  Petitioners'

contentions are tantamount to an assertion of equitable estoppel.

Equitable estoppel is a judicial doctrine that precludes a party

from denying its own representations which induced another to act

to his or her detriment.  Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992).  The Court has recognized that estoppel is applied against the Commissioner "with the utmost caution and restraint."  Id.; Kronish v. Commissioner, 90 T.C. 684, 695 (1988); Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987); Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977).  The taxpayer must establish the following elements before equitable estoppel will be applied against the Government:  (1) A false representation or wrongful, misleading silence by the party against whom the estoppel is claimed; (2) an error in a statement of fact and not in an opinion or statement of law; (3) the taxpayer's ignorance of the truth; (4) the taxpayer's reasonable reliance on the acts or statements of the one against whom estoppel is claimed; and (5) adverse effects suffered by the taxpayer from the acts or statements of the one against whom estoppel is claimed.  Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 60 (1995), affd. 140 F.3d 240 (4th Cir. 1998).  Estoppel requires a finding that the taxpayer relied on the Government's representations and suffered a detriment because of that reliance.  Id.

Petitioners' allegations do not satisfy the traditional requirements of estoppel.  Respondent's alleged failure to identify slavery reparations claims as a scam on its website does not amount to a false representation or wrongful, misleading

silence.  Moreover, we conclude that it was unreasonable as a matter of law for petitioners to base their $80,000 refund claim on the lack of a warning on respondent's website regarding slavery reparations claims.  See, e.g., Johnson v. Commissioner, T.C. Memo. 1993-272 (paying a refund to the taxpayers did not estop the Commissioner from later determining a deficiency in the same year on the ground that the transaction underlying the taxpayers' refund claim was a sham).

We likewise conclude that the special agent's remarks to petitioners, that they would not be required to repay the refund, do not warrant the application of equitable estoppel against respondent.  The special agent's statement was not a statement of fact but rather was one of law.  Further, we are not convinced that petitioners suffered a detriment as a result of the special agent's statement.  See, e.g., Nolte v. Commissioner, T.C. Memo. 1995-57 (holding taxpayers did not suffer any significant detriment as the result of Commissioner's earlier erroneous statement that tax liability for years in question was "paid in full" because  taxpayers would have been liable for deficiencies whether or not Commissioner made the misstatement), affd. by unpublished opinion 99 F.3d 1146 (9th Cir. 1996).

Consistent with the preceding discussion, we shall grant respondent's Motion for Summary Judgment.

To reflect the foregoing,

<u>An Order and decision will be entered for respondent</u>.