T.C. Memo. 2003-241


UNITED STATES TAX COURT


SAM F. FORD AND INGRID D. FORD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4691-99.                    Filed August 13, 2003.


<u>Kenneth G. Gordon</u>, for petitioner.

<u>Shirley M. Francis</u>, for respondent.


MEMORANDUM OPINION

WELLS, <u>Chief Judge</u>:  This case is presently before the Court
on two motions.  The first motion is petitioners' "Motion to
Suppress Evidence Illegally Obtained Through Violation of Fed. R.
Crim. P. Rule 6(e) and to Determine Issues of the Burden of
Proof".  The other motion is respondent's "Motion for Leave to
File Amendment to Answer to Amended Petition".  Unless otherwise
specified, all section references are to the Internal Revenue

Code, as amended, and all Rule references are to the Tax Court
Rules of Practice and Procedure, with the exception of references
to rule 6(e), which are made to that provision as contained in
the Federal Rules of Criminal Procedure.

Background

Some of the facts have been stipulated. The parties'
stipulation of facts and the accompanying exhibits are
incorporated by this reference. Petitioners, Sam F. Ford
(hereinafter referred to as petitioner) and Ingrid Doorn Ford,
resided in Eugene, Oregon, when they filed their petition in this
case.

Criminal Proceedings Against Petitioner

On November 15, 1990, petitioner pled guilty, in the U.S.
District Court for the Southern District of New York, Case No. 90
Cr. 777 (WK), to one count of making a false statement to the
Securities and Exchange Commission, pursuant to 18 U.S.C. sec.
1001, and to one count of filing a false tax return for the
taxable year 1986, pursuant to section 7206(1). In his
allocution incident to the guilty plea, petitioner stated:

> In this 1986 federal personal income tax return, I
> failed to include income in excess of $2.8 million
> dollars I had received from the sale of securities
> belonging to me which I had secreted in accounts in the
> name of my son and others. The income, however, was
> reported on my son's 1986 personal tax return and the
> tax was fully paid through him.

In conjunction with his guilty plea, petitioner entered into a cooperation agreement concerning other prosecutions. Thereafter, during March and April of 1992, the District Court conducted a 9-day "Fatico" hearing in petitioner's criminal case. A Fatico hearing is a proceeding held before the sentencing of a convicted criminal at which the prosecution and the defense may introduce evidence relating to the appropriate sentence.[1] The principal issues addressed during petitioner's Fatico hearing were whether petitioner had breached his cooperation agreement and whether petitioner was truthful about his interest in or control over certain foreign corporations and bank accounts.

Assistant U.S. Attorney Andrew E. Tomback (AUSA Tomback) represented the United States at the Fatico hearing. His first witness was Corporal Gregory James Pattison (Corporal Pattison) of the Royal Canadian Mounted Police. Corporal Pattison's duties included his being assigned, during September of 1986, to an investigation into the trading of shares in a company called International Tillex. His conduct of that investigation led to an examination of trading in shares of a company known as Beverly Development. Corporal Pattison testified that petitioner, using his own name or that of family members, had traded shares in both International Tillex and Beverly Development through seven

---

[1]See United States v. Lohan, 945 F.2d 1214, 1216 (2d Cir. 1991) (citing United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979)).

corporate brokerage accounts.  Corporal Pattison identified those brokerage accounts as "For Doorn Investments, Limited, Pooh Bear Investments, Limited, the Bear and Pebbles Investments, Limited, Canadian American Aquafarms International, Limited, Solar Aquafarms, Limited, Toronado Resources and Blackbird Investments."  Corporal Pattison further identified a schedule he had prepared showing the net proceeds of trading in International Tillex in those accounts, stating that the proceeds were in excess of Can$8 million.

AUSA Tomback next called Lawrence Leicht (Agent Leicht), a revenue agent assigned to the U.S. Attorney's Office in criminal investigations.  Agent Leicht had been assigned the case involving petitioner and International Tillex during December of 1989 and had reviewed the records in the case that Corporal Pattison had developed.  Agent Leicht had prepared schedules that traced funds going through bank or brokerage accounts belonging to petitioner or to members of his family.  Agent Leicht identified petitioner as "the prime mover in the promotion of the stock of Beverly Development from day one."  Agent Leicht also identified the seven brokerage corporations addressed by Corporal Pattison as the "7 Canadian corporations", although he clarified this classification to include only six Canadian corporations, because one of them, Blackbird, was in fact a Hong Kong corporation.  During the course of his testimony, Agent Leicht

addressed Government exhibit 3A. This exhibit consisted of some schedules he had prepared before the <u>Fatico</u> proceeding; he testified that they reflected "extensive additional monies from Canada." In response to an objection from Allison Manning, petitioner's counsel in the criminal proceeding, AUSA Tomback stated that the Government would not offer the schedules into evidence. He explained:

> I just seek to show because Ms. Manning went through at some length with Mr. Leicht to try to narrow down the figure, that the figure we're dealing with that Mr. Ford got is well above $2.3 million, it is certainly above the $3 million mark and I haven't even calculated it, but it is well above that as well. If Mr. Leicht were to sit down and calculate it, we can get a figure.

At some point during the criminal proceedings, Agent Leicht prepared a one-page handwritten document. It was labeled "Government exhibit 3 - For ID" and bore the heading "Corporate Brokerage A/C's Gains & Losses 1985-86". It was not, however, entered into evidence during the <u>Fatico</u> hearing. The document (hereafter exhibit 3) contained the following information:

| Brokerage Accounts | Total | Tillex | BVD | Other |
|---|---|---|---|---|
| Black Bird - 1986 | $2,443,127 | $1,826,439 | $599,115 | $17,573 |
| Toronado - 1986 | 1,376,606 | 1,081,071 | 235,142 | 60,393 |
| Canadian American - 1986 | 351,888 | 87,678 | 267,654 | (3,444) |
| "        "     - 1985 | 130,690 | 52,640 | 12,705 | 65,345 |
| Solar Aqua - 1986 | 384,262 | 60,726 | 305,704 | 17,832 |
| "     "   - 1985 | 48,759 | 38,199 | 10,560 | -- |
| Bear & Pebble - 1986 | 24,751 | 24,751 | – | -- |
| For Door - 1986 | 219,441 | 200,030 | 2,480 | 16,931 |
| "     "  - 1985 | 184,975 | 160,665 | 20,935 | 3,375 |
| Pooh-Bear - 1986 | 284,408 | 267,930 | – | 16,478 |
| "       "  - 1985 | 154,827 | 151,424 | – | 3,403 |
| | 5,603,734 | 3,951,553 | 1,454,295 | 197,886 |

Following the <u>Fatico</u> hearing, the U.S. Attorney for the Southern District of New York, in a letter dated May 21, 1992, advised respondent's Regional Counsel that

> On May 13, 1992 the court sentenced Mr. Ford to five years of imprisonment, three additional years of imprisonment suspended and five years probation.

> Pursuant to IRC §7602(c)(2)(B), the above action constitutes a termination of the referral, and as such, you are now free to seek appropriate civil action.

> You are reminded that rule 6(e) of the Federal Rules of Criminal Procedure greatly restricts the civil use of items constituting matters occurring before the Grand Jury.

Eight days later, Regional Counsel's office advised the District Director of Internal Revenue that it had closed petitioner's criminal matter. It advised that the matter "is released for civil consideration." It continued:

> You are reminded that no civil use of any grand jury material may be made without a rule 6(e) order, unless such material was made public through trial or otherwise. Additionally, the situations wherein a rule 6(e) order can be obtained are greatly limited. Therefore all information subject to the secrecy requirements of rule 6(e) derived directly or indirectly through the grand jury process, inclusive of exhibits, descriptive statements in reports and all

copies thereof, must be purged from the Criminal Investigation Division files prior to closing in turn to the Chief, Examination Division.

Administrative Proceedings Against Petitioner

At some point during 1997, Marco I. Minervini of respondent's Appeals Office in New York transmitted by facsimile a file copy of a so-called 30-day letter to Sylvia McGee of the Manhattan Examination Division. The 30-day letter was dated May 21, 1996, and was addressed to petitioners. It proposed adjustments to their taxes for the year 1986. The letter advised that petitioners would have 30 days to have respondent's proposed adjustments reviewed in respondent's Appeals Office. It contained two proposed upward adjustments for petitioners' income in 1986--one for $834,857 in short-term capital gains and the other for $4,249,563 in long-term capital gains. An accompanying explanation stated that the adjustments in question were "as set forth in Government exhibit #3, 90-CR-777-1." Additionally, the 30-day letter included the following identical explanations regarding each of the two proposed adjustments: "These exclude transactions in the names of Ingrid Doorn and Marc Ford, either reported by taxpayers or reported elsewhere (by Marc Ford)." Marc Ford is petitioner's son.

Thereafter, respondent's District Counsel in Manhattan (District Counsel) sent a memorandum dated October 13, 1998, to the Chief of Manhattan Appeals, with an attention line to M.

Minervini, Appeals Officer.  The memorandum indicated that District Counsel's office had reviewed a proposed notice of deficiency with respect to petitioners for their taxable year 1986.  District Counsel's memorandum advised:

> We discovered errors in your calculation of the capital gains adjustments as set forth on exhibit A attached to the notice.  The capital gains adjustments are based entirely upon an exhibit used in connection with the criminal case at docket no. 90-CR-777-1.  Reliance on this document is necessary at this point because all of the supporting documentation is grand jury material and unavailable to the IRS until a rule 6(e) Order is obtained.  Consequently, without the supporting documentation, it is imperative that your computation match the numbers contained on exhibit #3.  Accordingly, we have circled the numbers on your work paper (copy attached) that we think are incorrect and ask that you verify the accuracy of the numbers by comparing them to exhibit #3.

Attached to the memorandum were workpapers that reflected the capital gain totals that had been set forth in the 30-day letter.  District Counsel had made minor changes to the gains determined in two corporate brokerage accounts--a $3 change for "Black Bird Investments" and a $60 change for "Tornado Resources".  When these changes had been made, the totals for those two entities, as well as the overall totals, exactly matched those derived, for the year 1986, from exhibit 3, the "Corporate Brokerage A/C's Gains & Losses 1985-86".

In the same memorandum, District Counsel further requested: "Please obtain a copy of the transcript of the allocution hearing. * * * The transcript is a matter of public record; it is not grand jury material."[2]

Respondent thereafter drafted the statutory notice of deficiency issued to petitioners for their taxable year 1986, using the figures as corrected to match those in exhibit 3. In the notice of deficiency, respondent determined that, for 1986, petitioners had failed to report capital gains totaling $5,084,483. Respondent accordingly determined a deficiency of $998,754 in petitioners' Federal income tax for their taxable year ended December 31, 1986, plus an addition to tax for fraud under section 6653(b)(1)(A) of $749,066 and a time-sensitive penalty for fraud under section 6653(b)(1)(B).

On January 29, 2001, respondent obtained an order, pursuant to rule 6(e)(3)(C)(i), from the U.S. District Court for the Southern District of New York. The order grants respondent access to grand jury information from petitioner's criminal proceeding for purposes of the instant case.

Proceedings Before This Court

During the course of substantial pretrial activities before this Court, respondent, on February 8, 2002, served upon

---

[2]Although the evidence in the present proceedings contains the transcript of proceedings in the Fatico hearing, it includes few, if any, of the exhibits introduced during that hearing.

petitioners interrogatories including Interrogatory No. 1, which

reads as follows:

> When Sam Ford pled guilty to filing a false federal income tax return for the taxable year 1986, he admitted that he failed to report more than $2.8 million dollars of income from the sale of securities during 1986. How did Sam Ford arrive at that amount of unreported income, and how was it computed? Please provide a breakdown of the shares he sold by date, by company, and by amount realized.

Petitioners responded to Interrogatory No. 1 as follows:

> Petitioner Sam Ford did not "arrive at" the amount of $2.8 million that was the subject of the plea in question. Rather, the federal Government "arrived at" said amount after examining the return of Marc J. Ford. The breakdown of shares sold by date, by company and the amount realized, that are relative to said amount, should be set forth on the 1986 return of Marc J. Ford.

> Petitioners also served interrogatories upon respondent,

including Interrogatory No. 40. Subsequently, a revised version

of Interrogatory No. 40 was served upon respondent. Revised

Interrogatory No. 40 reads as follows:

> What evidence does the respondent have that the $2.8 million reported on Marc Ford's return and the subject of the allocution was realized on the shares giving rise to the adjustment discussed in exhibit A to the statutory notice, such evidence to include specific identification of shares disposed of including dates of disposition, amounts realized and basis.

On May 8, 2002, respondent issued an eight-page response to

petitioners' revised Interrogatory No. 40 as follows:

> The respondent does not have direct evidence that the Tillex and the Beverly Development stock, which gave rise to the capital gains adjustment in the notice

of deficiency for the taxable year 1986, are the identical shares of Tillex and Beverly Development stock which Marc Ford purportedly sold in 1986.

The circumstantial evidence linking petitioner Sam Ford's admitted unreported income for the year 1986 in excess of $2.8 million from the sale of securities he secretly held in the names of such nominees as Marc Ford, the Tillex and the Beverly Development stock purportedly sold in 1986 by Marc Ford when it belonged to petitioner Sam Ford, and the capital gains adjustment for the disposition of the Tillex and the Beverly Development stock in the statutory notice is compelling.

In that response, respondent also listed five items of circumstantial evidence to which respondent referred above. The first item is petitioner's admission in his allocution that he had failed to report income of $2.8 million "which I had secreted in the name of my son and others." The second item is a probation officer's report indicating that between 1984 and 1987 petitioner received "income from the sale of shares of Tillex stock which netted $2,500,000 in profits." The third item is the adjustment for capital gains contained in the statutory notice of deficiency indicating that petitioners had failed to report capital gains from the sale of stock in Tillex and Beverly Development in the total amount of $5,084,483, with a resulting increase in taxable income of $2,341,878. The fourth item is respondent's indication that, at the trial of the instant case, petitioner's son Marc Ford would testify that he sold stock in Tillex and Beverly Development during 1986 for a net gain of $2,807,704. The fifth item was a citation of petitioners'

response to Interrogatory No. 1, indicating that petitioners had not arrived at the $2.8 million figure, but rather that the Federal Government had arrived at that amount by examining the return of petitioners' son Marc J. Ford.  In the penultimate section of respondent's response to Revised Interrogatory No. 40, entitled "The reasonable inference to be drawn", respondent stated:  "The adjustment for capital gains in the statutory notice includes the gains from the disposition of the Tillex and Beverly Development stock, which was purportedly sold by Marc Ford in 1986."

Respondent's response to Revised Interrogatory No. 40 concluded with the following statement:

> Furthermore, the petitioners' alleging, for the first time during the teleconference with the Court on April 30, 2002, that their admitted unreported $2.8 million of income for the taxable year 1986 is unrelated to, and in addition to, the unreported capital gains set forth in the statutory notice, is inconsistent with their responses to the respondent's interrogatories.

At the call of the instant case for trial, petitioners filed the first motion now before us, entitled "Motion to Suppress Evidence Illegally Obtained Through Violation of Fed. R. Crim. P. Rule 6(e) and to Determine Issues of the Burden of Proof".  In their motion, petitioners assert that respondent had obtained exhibit 3 in violation of rule 6(e).  Petitioners urge that, as a result of the alleged violation, respondent's use of the document should be suppressed and, further, that respondent should bear

"the burden of going forward to establish the deficiency based upon evidence acquired independent of the grand jury."

Respondent obtained a continuance, and thereafter, the Court granted the parties' joint motion to submit the issues in petitioners' motion as fully stipulated under Rule 122.

Respondent filed the other motion now before us, seeking leave to file an amendment to the answer to the amended petition. Respondent's motion refers to a statement by petitioners' counsel during a telephone conference call with this Court April 30. In that statement petitioners' counsel allegedly indicated that the $2.8 million of unreported income which petitioner admitted in the allocution in his criminal case was not the same unreported income which is set forth in the notice of deficiency for petitioners' taxable year 1986. Although respondent's response to Revised Interrogatory No. 40 had indicated a belief that the $2.8 million was included in the notice of deficiency, respondent's proposed amendment now seeks to assert that petitioners owe taxes on that additional $2.8 million of unreported income to which petitioner admitted in his allocution. Respondent's amendment also seeks additional penalties for fraud.

Discussion

Petitioners' Motion To Suppress

With certain exceptions, rule 6(e) prohibits Government attorneys from disclosing "matters occurring before the grand

jury".[3]  The rule carries out the well-established principle that

grand jury matters should generally not be disclosed and that the

grand jury system requires secrecy.  <u>Lombardo v. Commissioner</u>, 99

T.C. 342, 360 (1992) (citing <u>Douglas Oil Co. v. Petrol Stops

Northwest</u>, 441 U.S. 211, 218-219 (1979)), affd. sub nom. <u>Davies

v. Commissioner</u>, 68 F.3d 1129 (9th Cir. 1995); <u>Berkery v.

Commissioner</u>, 91 T.C. 179, 188 (1988), affd. per order 872 F.2d

411 (3d Cir. 1989).  Under rule 6(e), Government attorneys should

---

[3]As it was in effect during the years in issue, rule 6(e)(2)
provided, in pertinent part, as follows:

   (2)  General Rule of Secrecy.  A grand juror, an
interpreter, a stenographer, an operator of a recording
device, a typist who transcribes recorded testimony, an
attorney for the Government, or any person to whom
disclosure is made under paragraph (3)(A)(ii) of this
subdivision shall not disclose matters occurring before the
grand jury, except as otherwise provided for in these rules.
No obligation of secrecy may be imposed on any person except
in accordance with this rule.  A knowing violation of rule 6
may be punished as a contempt of court.

Certain exceptions to the above secrecy rule are provided in
rule 6(e)(3).  One of those exceptions, rule 6(e)(3)(C)(i),
provides as follows:

   (3)  Exceptions.

      *      *      *      *      *      *      *

   (C)  Disclosure otherwise prohibited by this rule of
   matters occurring before the grand jury may also be
   made--

   (i)  when so directed by a court preliminarily to or in
   connection with a judicial proceeding;

not disclose grand jury matters to the Internal Revenue Service for use in determining or litigating civil tax liability without a showing of particularized need.  Upon such a showing, however, Government attorneys may obtain a "rule 6(e) order" from the District Court permitting such disclosure.  <u>United States v. Baggot</u>, 463 U.S. 476 (1983); <u>United States v. Sells Engg., Inc.</u>, 463 U.S. 418 (1983).

We have, in one instance, sanctioned the Commissioner, where some of the Commissioner's employees engaged in "extreme and substantial" breaches of grand jury secrecy, one which was "intentional and flagrant" and lasted "over a period of many years".  <u>Cohen v. Commissioner</u>, T.C. Memo. 1981-345.  On the other hand we have indicated that we shall not impose such sanctions when doing so would not serve the interests of justice, such as, for example, when "'only isolated and technical instances of improper disclosure had occurred.'"  <u>Crop Associates--1986 v. Commissioner</u>, T.C. Memo. 2000-216 (quoting <u>Ballas v. United States</u> (<u>In re Grand Jury Proceedings</u>), 62 F.3d 1175, 1178 (9th Cir. 1995)).

Rule 6(e) "'is intended only to protect against disclosure of what is said or takes place in the grand jury room * * * it is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury.'"  <u>United</u>

States v. Dynavac, Inc., 6 F.3d 1407, 1411 (9th Cir. 1993) (quoting United States v. Interstate Dress Carriers, Inc., 280 F.2d 52, 54 (2d Cir. 1960)). Thus, if a document is sought for its own sake, rather than to learn what took place before the grand jury, and if its disclosure will not compromise the integrity of the grand jury process, rule 6(e) does not prohibit its release. Id. at 1411-1412.

It is also established that, once grand jury material has been admitted as evidence in a criminal trial, it becomes part of the public record and thus is not subject to rule 6(e). Sisk v. Commissioner, 791 F.2d 58, 60 (6th Cir. 1986); In re Special February, 1975 Grand Jury, 662 F.2d 1232, 1236-1237 n.10 (7th Cir. 1981), affd. sub nom. United States v. Baggot, 463 U.S. 476 (1983); Bell v. Commissioner, 90 T.C. 878, 903-904 (1988); see Gavosto v. Commissioner, T.C. Memo. 1994-481. To similar effect, in Green v. Commissioner, T.C. Memo. 1993-152, affd. without published opinion 33 F.3d 1378 (5th Cir. 1994), this Court stated:

> Evidence which is presented at a criminal trial is not protected by the guarantees of secrecy surrounding grand jury investigations, but rather is a matter of public record. * * * Consequently, respondent is not prohibited from using evidence brought before a grand jury which was subsequently used at petitioner's criminal trial to determine petitioner's * * * civil tax liability.

Petitioners allege that respondent obtained exhibit 3 well before respondent obtained a rule 6(e) order and, in so doing,

violated rule 6(e).  Accordingly, because respondent used exhibit
3 to prepare the statutory notice of deficiency in the instant
case, they move that we both suppress use of exhibit 3 and shift
to respondent the burden of proof as to the proposed
deficiencies.

We decline to grant petitioners' motion.  Petitioners have
failed to make even a prima facie case for the proposition that
exhibit 3 was "grand jury material."  See Blalock v. United
States, 844 F.2d 1546, 1551-1552 (11th Cir. 1988).  Petitioners
have not identified the grand jury, when it met, who convened it,
or who its targets were.[4]  Petitioners themselves have not sought
a rule 6(e) order to ascertain whether there was a violation of
the rules relating to grand juries.  See DiLeo v. Commissioner,
T.C. Memo. 1989-540, affd. 959 F.2d 16 (2d Cir. 1992).  Exhibit 3
in no way indicates that the information it listed was connected
with a grand jury investigation.  Although exhibit 3 lists some
trading gains and losses, it does not indicate who controlled the
brokerage accounts or whether any taxes were owing or paid as a
result of the net gains.  Additionally, during the administrative
phase of the instant case, the record reveals that Government
officials repeatedly cautioned against revealing any grand jury

---

[4]The only reference we have found to a grand jury during the
Fatico hearing is an indirect reference to some unrelated
documents that were produced earlier pursuant to a grand jury
summons.

materials.  Indeed, the only evidence showing that exhibit 3 has any relation to a grand jury is the memorandum of District Counsel explaining that, unlike other documents involving petitioner, exhibit 3 may be used in a civil proceeding because it is not grand jury material.  This narration scarcely constitutes evidence that exhibit 3 was grand jury material.

Additionally, even if exhibit 3 constituted grand jury material, its contents were publicly revealed in 1992 during the Fatico proceeding.  We have set forth supra p. 6 the entire contents of exhibit 3.  It is a handwritten listing of a few columns of numbers.  Arguably, it would be possible to deduce from exhibit 3 that seven named corporate brokerage accounts had several million dollars in gains resulting from trading in Tillex Enterprises, BVD (an abbreviation for Beverly Development), and "other".  All of that information, however, was brought out in open court during the 9 days of petitioner's Fatico hearing.  In that hearing, Corporal Pattison testified that petitioner had traded shares in both International Tillex and Beverly Development through the seven corporate brokerage accounts.  He identified those accounts, and they are the same as those accounts named on exhibit 3.  Corporal Pattison further testified that petitioner's trading in International Tillex alone produced gains in excess of Can$8 million.  Agent Leicht subsequently corroborated Corporal Pattison's testimony, indicating that

petitioner's trading in Tillex and Beverly Development through the seven brokerage accounts had produced gains of several million dollars in U.S. currency.

The only information not reflected in the transcript of petitioner's _Fatico_ hearing that does not also appear in exhibit 3 is the specific dollar amounts of the unreported "millions" in gains and losses. Yet, as we have noted, it appears that the specific dollar amounts had not even been calculated at the time of the _Fatico_ hearing, which occurred at the end of the criminal proceedings against petitioner. During the _Fatico_ hearing, AUSA Tomback explained that, although he had not calculated the exact amount of petitioner's gains, "it is certainly above the $3 million mark and * * * it is well above that as well. If Mr. Leicht were to sit down and calculate it, we can get a figure." Thus the precise figures in exhibit 3 apparently were never seen by an earlier empaneled grand jury, and they in no way indicated the pattern of the grand jury investigation or the deliberations of the grand jury. Accordingly, these figures were not "matters occurring before a grand jury" and "are not subject to the secrecy provisions of rule 6(e)." _United States v. Phillips_, 843 F.2d 438, 441 (11th Cir. 1988). Moreover, the specific figures would have constituted only sparse "summaries that reveal nothing about what transpired before the grand jury", regardless of

whether they had been presented to the grand jury. In re Grand Jury Matter, 697 F.2d 511, 513 (3d Cir. 1982).

In view of the foregoing, we hold that petitioners have not shown that respondent's deficiency determination was based upon matters before the grand jury. Moreover, even if the determination had been based upon matters occurring before a grand jury, these matters were disclosed in the later criminal proceedings against petitioner and thus were no longer subject to the secrecy requirements of rule 6(e).

Since we have held that respondent's use of exhibit 3 did not violate rule 6(e), we have no occasion to consider whether shifting the burden of proof as to the deficiencies at issue would be an appropriate remedy for a violation of that rule. See DiLeo v. Commissioner, 959 F.2d at 21.

Respondent's Motion

On January 30, 2003, respondent filed the second motion now before us, seeking leave to file an amendment to the answer to the amended petition. Respondent's motion refers to an alleged statement of petitioners' counsel during a telephone conference call with this Court. In that statement, petitioners' counsel allegedly indicated that the $2.8 million of unreported income which petitioner admitted in the allocution of his criminal case was not the same unreported income which is set forth in the notice of deficiency for petitioners' taxable year 1986.

Respondent's proposed amendment now seeks to assert that petitioners owe taxes on that additional $2.8 million of unreported income, plus additional penalties for fraud.

Whether a motion seeking amendment should be allowed lies within the sound discretion of the Court.  Rule 41(a); Estate of Quick v. Commissioner, 110 T.C. 172, 178 (1998); Law v. Commissioner, 84 T.C. 985, 990 (1985).  In deciding the justice of a proposed amendment, we must examine the particular circumstances in the case before us.  Estate of Quick v. Commissioner, supra; Law v. Commissioner, supra.  We consider, among other factors, whether an excuse for the delay exists and whether the opposing party would suffer unfair surprise, disadvantage, or prejudice if the motion to amend were granted. Estate of Quick v. Commissioner, supra; Nolte v. Commissioner, T.C. Memo. 1995-57, affd. without published opinion 99 F.3d 1146 (9th Cir. 1996); Estate of Ravetti v. Commissioner, T.C. Memo. 1992-697; Spain v. Commissioner, T.C. Memo. 1978-270.

Respondent's motion appears to indicate a change in position.  In respondent's response to petitioners' Revised Interrogatory No. 40, respondent earlier indicated that, although respondent lacks direct evidence that the $2.8 million from petitioner's allocution was included in computing the determined deficiency, the circumstantial evidence that this amount has been included is "compelling".  Our own review of respondent's

"compelling" evidence fails to convince us that the $2.8 million of unreported income from stock sales during 1986 was, in fact, included in the original notice of deficiency. Respondent's five examples are, in general, vague and secondhand reports of income. Both petitioner's allocution and the proffered testimony of petitioner's son Marc Ford reflect that petitioners received $2.8 million in unreported income from stock sales during 1986. Neither petitioner's allocution nor the proffered testimony of petitioner's son Marc Ford, however, demonstrates that the $2.8 million amount is included in the more than $5 million of unreported gains from the sale of that stock determined in the notice of deficiency. Moreover, respondent's response to petitioners' Revised Interrogatory No. 40 fails to explain the apparently inconsistent language found in the file copy of the "30-day letter" dated May 21, 1996. That document stated that, with respect to the adjustments in issue: "These exclude transactions in the names of Ingrid Doorn and Marc Ford, either reported by taxpayers or reported elsewhere (by Marc Ford)."

Apparently, respondent now has had second thoughts about that "compelling" evidence and, accordingly, in the motion before us, seeks additional taxes and penalties on the theory that the $2.8 million in stock sale gains was not included in the notice of deficiency.

Petitioners' reply to respondent's motion finds it "rather absurd" that respondent has sought information from petitioners regarding the contents of the deficiency notice.  Petitioners' reply, however, does not deny that during the April 30 conference call, petitioners' counsel did, in fact, state that the $2.8 million addressed in petitioner's allocution was not included in the $5 million determined deficiency.  Accordingly, petitioners' reply does not contravene, and may in fact support, respondent's assertion that petitioners may be liable for taxes on an additional $2.8 million in unreported income.

The matter should be sorted out, and, because it may involve an increase to the determined deficiency, the proper way to address it is through an amendment to the pleadings, under Rule 41.  We are mindful of petitioners' general complaints of prejudice should we grant respondent's motion, and we are aware that respondent did not file the proposed amendment until 9 months after the telephone conference call with the Court.  Although unexplained, the delay does not appear particularly harmful when compared to the time this case has already consumed, and although petitioners complain that allowing the proposed amendment may require further efforts on their part, we do not think that possibility would be unduly prejudicial to them.  The instant case has not been tried, nor is there a date set for a trial.  Moreover, Rule 142 places upon respondent the burden of

proving that, during 1986, petitioners received $2.8 million in unreported income that respondent had not included in the statutory notice of deficiency.

Our decision to grant respondent's motion is further informed by section 6212(c). That provision authorizes the Commissioner to issue an additional notice of deficiency while a case is before us "in the case of fraud". We have given that provision full effect, where, as in the instant case, respondent has earlier sought to file an amended pleading asserting fraud.[5] Burke v. Commissioner, 105 T.C. 41 (1995). Accordingly, even if we should deny respondent's motion to amend his answer and assert an increased deficiency, including fraud, it appears that section 6212(c) would permit respondent to issue a new statutory notice of deficiency determining the same matters that respondent asserts in the proposed amendment to amended answer. We see no reason to require the parties to leap over these additional procedural hurdles. See Arthur A. Everts Co. v. Commissioner, a

---

[5]Sec. 6212(c)(1), in pertinent part, provides as follows:

SEC. 6212(c). Further Deficiency Letters Restricted.--

(1) General Rule.--If the Secretary has mailed to the taxpayer a notice of deficiency as provided in subsection (a), and the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), the Secretary shall have no right to determine any additional deficiency of income tax for the same taxable year, * * * except in the case of fraud, * * *.

Memorandum Opinion of this Court dated Aug. 12, 1949. Accordingly, respondent's motion to amend the answer will be granted.

As the foregoing discussion makes obvious, our rulings on these motions will require substantial additional proceedings before the instant case is properly submitted for decision. Therefore, acting on our own motion, we shall vacate our earlier order dated October 17, 2002, to the extent that it granted the parties' "Joint Motion for Leave to Submit Motion for Decision Under Tax Court Rule 122."

To reflect the foregoing,

> An order will be issued denying petitioners' Motion to Suppress Evidence Illegally Obtained through Violation of Fed. R. Crim. P. Rule 6(e) and to Determine Issues of the Burden of Proof, granting respondent's Motion for Leave to File Amendment to Answer to Amended Petition, and vacating our order granting the parties' Joint Motion for Leave to Submit Motion for Decision Under Tax Court Rule 122.