T.C. Memo. 2009-282


UNITED STATES TAX COURT


TIMOTHY BURKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5100-08L.                    Filed December 8, 2009.


        The IRS determined a deficiency in P's income tax
for 1998.  P petitioned the Tax Court, which sustained
the IRS's determination.  P did not file an appeal bond
but appealed to the Court of Appeals for the First
Circuit, which affirmed.  The Supreme Court denied P's
petition for certiorari.  After the Tax Court's
decision and during P's appeal, the IRS assessed tax
and interest for 1998 and issued a levy notice.  The
IRS also imposed a failure-to-pay addition to tax under
I.R.C. sec. 6651(a)(3).  P requested a CDP hearing and
challenged the addition to tax on the grounds that the
IRS should not have assessed the addition while P
pursued his appeals, that the assessment was improper
because neither the notice of deficiency nor the Tax
Court determined any penalties, and that he reasonably
relied on statements by IRS examining agents that no
penalties would apply.  P requested abatement of the
I.R.C. sec. 6651(a)(3) failure-to-pay addition to tax.
IRS Appeals denied P's abatement request and sustained

the levy notice.  P appealed the notice of determination.

Held: P is liable for the I.R.C. sec. 6651(a)(3) failure-to-pay addition to tax.

Held, further, Appeals did not abuse its discretion in sustaining the collection action, and collection by levy may proceed.


Timothy Burke, pro se.

Michael R. Fiore, for respondent.


MEMORANDUM OPINION


GUSTAFSON, Judge:  Petitioner Timothy Burke has appealed, pursuant to section 6330(a), the determination by the Internal Revenue Service (IRS) to uphold a proposed levy to collect an addition to tax under section 6651(a)(3) for tax year 1998.[1]  The issues for decision are:  (1) Whether Mr. Burke is liable for the failure-to-pay addition to tax under section 6651(a)(3) with respect to his unpaid income tax liability for tax year 1998; and (2) whether the IRS abused its discretion in determining to proceed with collection by levy.

---

[1]Except as otherwise noted, all section references are to the Internal Revenue Code (26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The parties submitted this case fully stipulated pursuant to Rule 122, reflecting their agreement that the relevant facts could be presented without a trial. We incorporate by this reference the parties' stipulation of facts and supplemental stipulation of facts, both dated March 17, 2009, and the exhibits attached thereto.[2]

Mr. Burke worked for the IRS from 1978 to 1985, became a certified public accountant in 1985 or 1986, earned an LL.M. in taxation in 1986, and has practiced law since 1987. He resided in Massachusetts when he filed the petition.

### 1998 Federal Income Tax Return and Examination

Mr. Burke filed his 1998 Federal income tax return in December 1999. With his return he included a Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request, to disclose that he was reporting his distributive share of partnership income as zero even though the partnership tax return filed by his partner reported that they each had a distributive share for 1998 of $121,000. The IRS determined that the $121,000 distributive share was taxable to Mr. Burke in 1998 and also

---

[2]Both of the parties attached to their post-trial briefs documents that they apparently intended as additional evidence. These documents were not included with the parties' stipulations of facts, and neither party moved to reopen the record to admit these additional documents. In this opinion we do not rely upon information contained in documents which are not in evidence.

disallowed certain business deductions. The IRS examining officer's activity record notes that the IRS did not determine an accuracy-related penalty or a fraud penalty for 1998 because of Mr. Burke's disclosure. The IRS issued a notice of deficiency determining a $41,338 deficiency in tax and no additions to tax or penalties.

1998 Deficiency Litigation

On August 19, 2004, Mr. Burke filed a petition with this Court at docket No. 14904-04 seeking a redetermination of the deficiency. After Mr. Burke provided an analysis of the partnership's income during discovery, the IRS increased the deficiency to $53,077. Mr. Burke contended, however, that the existence of a controversy between Mr. Burke and his partner rendered the amount of his partnership distributive share indefinite, that the partnership receipts were frozen in escrow during 1998 and thus unavailable to him, and that his lack of a right to the income required postponing the inclusion of his distributive share in income.

This Court granted the Government's motion for summary judgment. Burke v. Commissioner, T.C. Memo. 2005-297, filed Dec. 27, 2005 (Burke I). We held that the distributive share was taxable income to Mr. Burke in 1998, independent of any dispute between him and his partner and regardless of whether the share was distributed or held in escrow. We affirmed the Government's

calculation of the distributive share and sustained the disallowance of claimed business deductions because Mr. Burke failed to substantiate the expenses and to establish their deductibility. On January 18, 2006, we entered an order and decision sustaining a $53,077 deficiency for tax year 1998.

Mr. Burke appealed our decision, but he did not file a bond under section 7485 to stay assessment and collection. The U.S. Court of Appeals for the First Circuit affirmed our decision in May 2007, Burke v. Commissioner, 485 F.3d 171 (1st Cir. 2007), and the U.S. Supreme Court denied Mr. Burke's petition for a writ of certiorari in February 2008, Burke v. Commissioner, 552 U.S. 1186 (2008).

IRS Collection Action

On July 21, 2006, while Mr. Burke's appeal was pending, the IRS assessed $85,191.16, consisting of the $53,077 deficiency and $32,114.16 of accrued interest; and no later than September 19, 2006, it issued a notice and demand for payment.[3] Mr. Burke did

---

[3]Although the parties did not introduce into evidence a copy of the notice and demand for payment or a transcript showing that one was issued, the notice of determination states: "The Settlement Officer * * * verified through transcript analysis that * * * the notice and demand for payment letter was mailed to * * * [Mr. Burke's] last known address, within 60 days of assessment, as required by IRC section 6303". (Emphasis added.) This was part of the verification that the Office of Appeals was required to obtain pursuant to section 6330(c)(1). Mr. Burke has not alleged that he did not receive the notice and demand for payment, and he did not challenge in his petition or otherwise the adequacy of the section 6330(c)(1) verification. Therefore,
(continued...)

not pay the amount demanded. Mr. Burke was able to pay the liability at the time it was demanded,[4] but he did not make any payments toward this liability until more than a year later, in November 2007.

On February 17, 2007, the IRS issued a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing to Mr. Burke, advising him that the IRS intended to levy to collect his unpaid balance for tax year 1998.[5] By that time, it had been at least five months since the IRS had given notice and demand for payment to Mr. Burke.

CDP Hearing

Mr. Burke submitted to the IRS a Form 12153, Request for a Collection Due Process or Equivalent Hearing, dated March 6, 2007, timely requesting a collection due process (CDP) hearing. Mr. Burke's CDP request stated that he disagreed with the

---

[3](...continued)
we are satisfied that the IRS issued a notice and demand for payment to Mr. Burke as required by section 6303. However, we presume--for Mr. Burke's benefit--the latest date (i.e. September 19, 2006, the sixtieth day) for the issuance of the notice and demand.

[4]In response to attempts by respondent to conduct discovery on the subject of Mr. Burke's finances, Mr. Burke affirmed that he does not contend that he was unable to pay the tax when it was due or that paying on the due date would have imposed an undue hardship. See Mar. 4, 2009, order at 2.

[5]The record does not include a copy of the final notice of intent to levy. However, the parties agree that the IRS issued this notice on February 17, 2007, and that Mr. Burke timely requested a CDP hearing in response to that notice.

proposed levy because "the filing of a lien is inappropriate as the issue of the taxes allegedly owed is before the First Circuit Court of Appeals on this date".[6] Mr. Burke further indicated that he was interested in submitting an offer-in-compromise (OIC).

On July 25, 2007, the IRS's Office of Appeals scheduled Mr. Burke's CDP hearing for September 7, 2007, and asked him to provide within 14 days a completed Form 433, Collection Information Statement for Wage Earners and Self-Employed Individuals, and a detailed proposal regarding any collection alternative he wanted considered during the CDP hearing.

Mr. Burke did not submit a completed Form 433 or a detailed OIC. A settlement officer conducted the CDP hearing through telephone conferences and correspondence exchanges with Mr. Burke between August 8, 2007, and January 7, 2008. Mr. Burke requested a stay in the CDP hearing during the pendency of his appeals. The settlement officer concluded that there was no basis for delaying the CDP hearing. In September 2007 Mr. Burke requested a copy of his account transcript and indicated that he intended

---

[6]There is no indication in the record that the IRS had filed a Federal tax lien against Mr. Burke. We presume he intended his statement to refer to the proposed levy; i.e., that the IRS should not levy on his property because his appeal was still pending.

to pay 99 percent of his tax liability, with the balance paid in installments.[7]

The settlement officer sent Mr. Burke a copy of his account transcript on September 24, 2007, and the summary section of the transcript listed the following amounts:

| | | |
|---|---|---|
| Account balance | $85,191.16 | |
| Accrued interest | 7,046.48 | As of: Jul. 16, 2007 |
| Accrued penalty | 5,042.31 | As of: Jul. 16, 2007 |

The "Account balance" of $85,191.16 consisted of the tax and interest that had been assessed in July 2006, and the "Accrued" amounts were liabilities that had accrued after that time. Apart from the "Accrued penalty", the tax and interest alone (i.e., the

---

[7]The settlement officer noted that Mr. Burke offered to pay "99% of the liability to allow him the opportunity to proceed with his appeal [of Burke I] to U.S. Supreme Court on his partnership issue". This explanation seems to reflect confusion either by Mr. Burke or by the settlement officer. When a case ceases to present a "live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law", it has become moot. Hall v. Beals, 396 U.S. 45, 48 (1969). A taxpayer's appeal to the Tax Court under section 6330(d) from a notice of determination to proceed with collection may be rendered moot by his paying the liability and the IRS's ceasing collection activity because there remains nothing to collect. See Greene-Thapedi v. Commissioner, 126 T.C. 1, 7-8 (2006). However, Mr. Burke's appeal that was pending in September 2007 was his appeal of the deficiency determination in Burke I, not an appeal of a collection determination. A taxpayer's payment of a tax deficiency after the IRS mails a notice of deficiency does not deprive the Tax Court of jurisdiction over the deficiency, sec. 6213 (b)(4), and in a deficiency case, the Tax Court has jurisdiction to determine an overpayment, see sec. 6512(b)(1). Thus, even if Mr. Burke had paid his entire liability (rather than 99 percent of it), he could still have pursued his appeal of Burke I to seek an overpayment.

tax and interest assessed in July 2006 plus additional interest accrued as of July 16, 2007) amounted to $92,237.64.

In October 2007 Mr. Burke left a message for the settlement officer asking about the penalty entry on the transcript, because neither the notice of deficiency nor the decision in Burke I had included any penalty.  The settlement officer reviewed Mr. Burke's file and confirmed that the IRS had not determined any penalties in the notice of deficiency nor asserted any penalties in the deficiency case.  He determined that the amount in issue was an "FTP penalty" (i.e., a failure-to-pay addition to tax under section 6651(a)(3)) that began to accrue after the Tax Court had decided Burke I and the IRS had made the resulting assessment of tax and interest.[8]

As of September 2007, at least a year had passed since the IRS had issued its notice and demand to Mr. Burke.  The settlement officer prepared a proposed installment agreement calling for an initial payment of $92,000 and monthly payments of $376 beginning on January 15, 2008.  He mailed the proposed

_____

[8]The settlement officer, the account transcript, and both parties refer to the failure-to-pay addition under section 6651(a)(3) as a "penalty".  However, each of the additions under section 6651--for failure to file a return, sec. 6651(a)(1); for failure to pay the amount shown as tax on a return, sec. 6651(a)(2); and for failure to pay an amount not shown but required to be shown on a return within 21 days of notice and demand (within 10 days if over $100,000), sec. 6651(a)(3)--is an "addition to tax" and not a "penalty".  See infra pt. II.A. Notwithstanding the parties' use of the term "penalty", we use the term "addition to tax" hereafter.

agreement to Mr. Burke on October 30, 2007, asking him to sign and return the Form 433-D, Installment Agreement, within 15 days. Mr. Burke did not sign and return the Form 433-D, but he made a $92,000 payment on November 15, 2007--designating his payment "solely to pay tax and accrued interest." The IRS applied the payment toward his 1998 liability, and the payment covered all of the tax, all of the assessed interest, and some of the additional accrued interest.

As is noted above, the account transcript that the settlement officer provided to Mr. Burke reflected accrual of the section 6651(a)(3) addition to tax (referred to as "Accrued penalty") in the amount of $5,042.31 as of July 16, 2007. Following discussions with the settlement officer, Mr. Burke submitted a request, dated December 17, 2007, for abatement of the section 6651(a)(3) addition to tax, and the settlement officer received the request on December 20, 2007. Mr. Burke argued that abatement was appropriate because (1) "the Tax Court did not even suggest that penalties were to be applied", and (2) "the dispute between the Service and the taxpayer remains open until such time that the Supreme Court makes a determination on the issue of whether income is to be reported"--implying that no addition to tax should be imposed while he was appealing the underlying liability.

The settlement officer considered Mr. Burke's arguments and concluded that Mr. Burke did not present any reasonable basis for abatement.  In a telephone conference on January 7, 2008, the settlement officer informed Mr. Burke of his decision.  Mr. Burke stated that he disagreed with this determination and suggested an installment agreement that did not include the failure-to-pay penalty.  The settlement officer considered Mr. Burke's suggestion but concluded that the IRS would not enter into an installment agreement for less than all of a taxpayer's liability.  By letter dated January 23, 2008, the settlement officer again informed Mr. Burke that he was denying the abatement request, and he included a detailed explanation of how he reached this decision.

As indicated supra note 8, certain of the documents in the record refer to the section 6651(a)(3) addition to tax as a "penalty".  In addition, some documents appear to identify the Code section for this addition inaccurately.  For example, the notice of determination twice refers to the addition as an "IRC 6751(a)(3) penalty", and the settlement officer's case activity notes occasionally refer to the addition as occurring under section 6651(a)(2) but usually refer to section 6651(a)(3).  Other documents in the record but not admitted into evidence contain similar errors.

Notwithstanding these clerical errors, it is obvious from the record that both Mr. Burke and the settlement officer clearly focused on the section 6651(a)(3) failure-to-pay addition to tax throughout the CDP hearing. For example, Mr. Burke's December 17, 2007, letter requesting relief from the addition to tax specifically argued for abatement of the addition under section 6651(a)(3), and the settlement officer clearly notified Mr. Burke--not only during the CDP hearing but also in the attachment to his January 23, 2008, letter denying the abatement request--that the additions were pursuant to section 6651(a)(3). We find that the IRS undeniably informed Mr. Burke which addition to tax it was imposing. These minor typographical errors are irrelevant to whether Mr. Burke is liable for the addition and to whether he had a hearing on that liability.

On January 25, 2008, the IRS issued to Mr. Burke a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. In the notice of determination, the Office of Appeals recited that the settlement officer: (1) verified that applicable legal and procedural requirements were met; (2) could not consider the OIC collection alternative indicated in the CDP request because Mr. Burke did not submit required documentation; (3) considered the issues Mr. Burke raised (specifically, his challenge to the section 6651(a)(3) addition to tax); (4) could not agree to an installment agreement because Mr. Burke refused

to enter such an agreement for the full amount of the liability and because he did not submit required documentation (the collection information statement and a signed, written request for an installment agreement); and (5) concluded that collection by levy properly balanced the need for efficient collection with Mr. Burke's legitimate concern that the collection action be no more intrusive than necessary.  The IRS sustained the proposed levy.

The Current Case

Mr. Burke then filed his petition with the Tax Court, pursuant to section 6330(d), alleging the following three errors:

> (a)  The Respondent abused its [sic] discretion in failing to enter into an instalment [sic] agreement for the amount of outstanding tax (if any) and interest thereon.

> (b)  The Respondent abused its discretion in failing to abate the penalty imposed by IRC § 6651(a)(3).

> (c)  The Respondent's Determination, which was made subsequent to its representation that a Determination would not be issued without contacting the Petitioner (to the recollection of the Petitioner) and immediately after its failure to include its rationale for concluding that the subject penalty was not to be abated in a letter to the Petitioner evidences that the Determination was in error, arbitrary, capricious and biased against the Petitioner.

However, in Mr. Burke's brief he eventually articulated a single issue, i.e.--

Whether the Respondent abused its [sic] discretion in the assessment and failure to abate the penalty of IRC § 6651(a)(3).

To the extent that the three-fold issues originally stated in his petition exceed the single issue eventually argued in his brief, Mr. Burke has abandoned those other issues,[9] and we consider only his challenge to the section 6651(a)(3) addition to tax.

The parties jointly moved to submit the case under Rule 122, and the case is now before the Court for decision without trial.

## Discussion

### I. Collection Due Process Principles

#### A. Levy Procedures

If a taxpayer fails to pay any Federal income tax liability after notice and demand, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property. However, Congress has added provisions that must be complied with before the IRS can collect by levy. Before proceeding, the IRS must issue a final notice of intent to levy and notify the taxpayer of the right to an administrative hearing--a "collection due process" or CDP hearing--before the Office of Appeals. Sec. 6330(a) and (b)(1).

---

[9]See Rule 151(e)(4) and (5) (requiring that a party's brief state the points on which he relies); Remuzzi v. Commissioner, T.C. Memo. 1988-8 (issue not addressed by the taxpayers on brief deemed conceded), affd. without published opinion 867 F.2d 609 (4th Cir. 1989).

B.    Issues Considered at the CDP Hearing

Section 6330(c) sets forth three pertinent procedures for the CDP hearing.  First, the appeals officer[10] must obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.  Sec. 6330(c)(1).  Mr. Burke does not allege any defect in the required verification.

Second, section 6330(c)(2) addresses the issues considered at the hearing.  The taxpayer may raise any issues relevant to the proposed collection of tax.  Pursuant to section 6330(c)(2)(A) a taxpayer may raise collection issues (including collection alternatives, such as installment agreements and OICs).  In his CDP request Mr. Burke checked the box for an OIC, and his petition alleged error in the IRS's refusal to allow an installment agreement; but as is noted supra p. 14, he has abandoned any challenge to the IRS's disallowance of any collection alternative.

Pursuant to section 6330(c)(2)(B) a taxpayer may challenge the underlying tax liability, but he may do so only if he "did

---

[10]The record identifies the person who conducted Mr. Burke's CDP hearing as a "settlement officer".  Section 6330(c)(1) and (c)(3) refers to the person who conducts the CDP hearing as an "appeals officer".  However, section 6330(b)(3) provides that the CDP hearing shall be conducted by an "officer or employee" of the IRS Office of Appeals (emphasis added).  A settlement officer is one type of employee in that office qualified to hold CDP hearings.  See Reynolds v. Commissioner, T.C. Memo. 2006-192.  We will use the statutory term "appeals officer" hereafter.

not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." During his agency-level hearing, Mr. Burke disputed the addition to tax listed on the account transcript as a "penalty". Mr. Burke did not receive any notice of deficiency with respect to the section 6651(a)(3) failure-to-pay addition to tax. See infra pt. II.A. The record does not show that Mr. Burke had an opportunity to dispute the addition to tax before the CDP hearing. Thus, Mr. Burke was entitled to challenge this addition to tax during the CDP hearing, see Kimball v. Commissioner, T.C. Memo. 2008-78, and to litigate it here.

Third, from the information presented during the CDP hearing, the appeals officer must decide whether the proposed levy action may proceed, and section 6330(c) requires the appeals officer to consider: (1) "verification from the Secretary that the requirements of any applicable law or administrative procedure have been met", see sec. 6330(c)(3)(A) (cross-referencing sec. 6330(c)(1)); (2) relevant issues raised by the taxpayer, see sec. 6330(c)(3)(B) (cross-referencing sec. 6330(c)(2)); and (3) "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary", see sec. 6330(c)(3)(C). If the

Office of Appeals then issues a notice of determination to proceed with the proposed levy, the taxpayer may appeal the determination to this Court within 30 days, as Mr. Burke has done, and we now "have jurisdiction with respect to such matter". Sec. 6330(d)(1).

C.   Standard of Review

Where the validity of the underlying tax liability is properly at issue in the appeal of a collection determination, the Tax Court reviews de novo the determination of the underlying tax liability.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Insofar as issues other than the validity of the underlying tax liability are presented, the Court reviews the administrative determination for an abuse of discretion.  Downing v. Commissioner, 118 T.C. 22, 30-31 (2002); Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 182; Godwin v. Commissioner, T.C. Memo. 2003-289, affd. 132 Fed. Appx. 785 (11th Cir. 2005).  An abuse of discretion occurs when the exercise of discretion is without sound basis in fact or law.  Murphy v. Commissioner, 125 T.C. 301, 308 (2005), affd. 469 F.3d 27 (1st Cir. 2006).

Thus, we review de novo the appeals officer's conclusion that Mr. Burke is liable for the section 6651(a)(3) addition to tax, and we review for abuse of discretion other issues affecting the subsequent determination to sustain the collection action.

II. Mr. Burke Is Liable for the Section 6651(a)(3) Addition to Tax

    A. The Nature of the Section 6651(a)(3) Addition to Tax

Chapter 68 of the Internal Revenue Code (sections 6651-6751) is entitled "Additions to the Tax, Additional Amounts, and Assessable Penalties". As that title indicates, it provides for some liabilities that are called "additions to the tax" and other liabilities that are called "penalties". Subchapter A (sections 6651-6665) is entitled "Additions to the Tax and Additional Amounts" and consists of three parts: Part I is "General Provisions" (sections 6651-6658); part II is "Accuracy-related and fraud penalties" (sections 6662-6664); and part III is "Applicable Rules" (section 6665). Subchapter B is "Assessable Penalties" (sections 6671 through 6725). Thus, some "penalties" are included in subchapter A, part II (i.e., the "Accuracy-related and fraud penalties") and other penalties are included in subchapter B (i.e., the "Assessable Penalties"). However, part I of subchapter A includes not "penalties" but rather "Additions to the Tax and Additional Amounts".

Within that portion of the Code--i.e., within chapter 68, subchapter A, part I--is the liability at issue here. Section 6651(a)(3) imposes an "addition to the tax" that the IRS proposes to collect from Mr. Burke. It provides as follows:

SEC 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX.

> (a)  Addition to the Tax.-- In case of failure--

> *     *     *     *     *     *     *

> (3)  to pay any amount in respect of any tax required to be shown on a return specified in paragraph (1) which is not so shown * * * within 21 calendar days from the date of <u>notice and demand</u> therefor * * *, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount of tax stated in such notice and demand 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.  [Emphasis added.]

The "notice and demand" referred to in section 6651(a)(3) is provided for in section 6303:

SEC 6303.  NOTICE AND DEMAND FOR TAX.

> (a) General Rule.--Where it is not otherwise provided by this title, the Secretary shall, as soon as practicable, and within 60 days, <u>after the making of an assessment</u> of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof.  Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.  [Emphasis added.]

"Notice and demand" thus follows the making of an assessment.  Where the assessment is of an income tax deficiency determined by the IRS, that assessment is deferred by the deficiency process:  The IRS issues a notice of deficiency pursuant to section 6212, and section 6213 gives the taxpayer 90 days to file a petition with the Tax Court.  Section 6213(a)

provides that "no assessment of a deficiency in respect of" the income tax "shall be made * * * until the expiration of such 90-day * * * period * * * nor, if a petition has been filed with the Tax Court, <u>until the decision of the Tax Court has become final</u>." (Emphasis added.)

The section 6651(a)(3) addition itself is not subject to the deficiency procedures applicable to tax. By its nature, the addition is not fixed but increases in amount (up to a total of 25 percent of the tax) as time passes and the tax remains unpaid. The IRS may assess the accrued addition from time to time, but it is not required to do so, and it may collect the addition without assessment. See <u>Reese v. Commissioner</u>, T.C. Memo. 2006-21, affd. 201 Fed. Appx. 961 (4th Cir. 2006). Section 6665(b) provides explicitly that the deficiency procedures "shall not apply to any addition to tax under section 6651"; and the exception to that rule for "an addition * * * which is attributable to a <u>deficiency</u> in tax", sec. 6665(b)(1) (emphasis added), does not apply to the section 6651(a)(3) addition, which by its nature is attributable not to a tax "deficiency" but rather to a failure to pay tax that has been assessed.[11]

---

[11]See <u>Estate of Russo v. Commissioner</u>, T.C. Memo. 1991-310. Section 6211(a) defines a deficiency as the difference between (a) the taxpayer's actual tax liability and (b) the tax as originally reported by the taxpayer, plus "amounts previously assessed * * * as a deficiency". That is, once the tax actually due has all been <u>assessed</u>, there is no more deficiency--whether

(continued...)

The result of these interlocking provisions in a circumstance like the one at issue in this case is as follows: The failure-to-pay addition does not begin to accrue until notice and demand for payment of the tax, sec. 6651(a)(3); notice and demand for payment of the tax cannot be made until assessment, sec. 6303; and assessment of the tax cannot be made until the Tax Court's decision has become final. Consequently, the order of events is: (1) Tax Court decision, (2) assessment of tax, (3) notice and demand, and--only thereafter--(4) accrual of the failure-to-pay addition of section 6651(a)(3), with or without assessment. Thus, the pendency of a Tax Court deficiency suit will, by forestalling assessment of the tax, sec. 6213(a), indirectly delay the accrual of the section 6651(a)(3) addition to tax. This case poses the question of how long that delay will be.

B.   Mr. Burke's Contentions

There is no question that Mr. Burke owes the tax at issue, that it was assessed, that notice and demand was made for payment of it, and that Mr. Burke did not pay it within 21 days. However, Mr. Burke contends that collection of the

---

[11](...continued)
or not the tax due has been paid. The section 6651(a)(3) addition, on the other hand, does not accrue until after the tax due has been assessed (and demanded, and left unpaid), when by definition there is no deficiency. Thus, the section 6651(a)(3) addition can never be "attributable to a deficiency", for purposes of section 6665(b)(1).

section 6651(a)(3) addition should not be sustained, for the four reasons we now consider.

### 1. Non-assertion Until the CDP Hearing

As far as the evidence before us shows, the first explicit mention by the IRS that Mr. Burke owed an addition under section 6651(a)(3) was during the CDP hearing. Mr. Burke argues that he does not owe the addition because it was not raised by the examining agent during the audit, nor included on the IRS's notice of deficiency, nor litigated in or redetermined by the Tax Court. The argument is misguided. The section 6651(a)(3) addition could never be properly asserted during audit, nor in a notice of deficiency, nor in a Tax Court decision, since at the time of those events it remains to be seen whether the taxpayer will pay the tax on notice and demand (which, by definition, has not yet been made and cannot be made until the deficiency can be assessed). If the taxpayer does timely pay upon demand, then there will never be a failure to pay, and the failure-to-pay addition will never begin to accrue. The non-assertion of the section 6651(a)(3) addition until the CDP hearing has no effect on Mr. Burke's liability to pay it.

### 2. The Pendency of Mr. Burke's Appeal

Mr. Burke cites the pendency of the appeal of his deficiency case as a reason that he should not be liable for the section 6651(a)(3) failure-to-pay addition. We discuss below in

part II.B.3 his contention that the appeal constituted "reasonable cause" for non-payment.  It appears, however, that he also contends that, as a matter of law, the addition should not accrue until after resolution of the appeal.  If so, the contention fails.

As is explained above, when a taxpayer files suit in the Tax Court, the deficiency determined by the IRS cannot be assessed (and therefore the addition does not begin to accrue) "until the decision of the Tax Court has become final."  Sec. 6213(a).  Section 7481 provides the "Date when Tax Court decision becomes final", and it is affected by appeals.  A taxpayer may appeal an adverse decision of the Tax Court pursuant to section 7483; and if he receives an adverse decision from the Court of Appeals, then pursuant to 28 U.S.C. section 1254 he may petition the U.S. Supreme Court for a writ of certiorari.  In an instance like the one at issue--i.e., where the taxpayer files a timely notice of appeal, the Court of Appeals affirms, and the taxpayer files with the Supreme Court a timely petition for certiorari-- section 7481(a)(2)(B) provides that "the decision of the Tax Court shall become final * * * [u]pon the denial of a petition for certiorari".

If section 7481 were the only provision pertinent to the proper timing of the assessment, then it would appear that denial of certiorari must happen before there could be an assessment

(and then notice and demand, and then the accrual of the failure-to-pay addition).  Mr. Burke made his $92,000 payment in November 2007, and as far as the record shows, that payment covered all his <u>assessed</u> liabilities (though not all of the additional accrued interest).  The Supreme Court did not deny his petition for certiorari until February 2008.  If the section 6651(a)(3) addition could not begin to accrue until certiorari was denied, then the addition in question under section 6651(a)(3) would not be owed.

However, an overriding provision appears in section 7485:

SEC 7485.  BOND TO STAY ASSESSMENT AND COLLECTION.

   (a) Upon Notice of Appeal.--Notwithstanding any provision of law imposing restrictions on the assessment and collection of deficiencies [e.g., section 6213(a)], <u>the review under section 7483</u> [i.e., appeal of a Tax Court decision] <u>shall not operate as a stay of assessment or collection</u> of any portion of the amount of the deficiency determined by the Tax Court unless a notice of appeal in respect of such portion is duly filed by the taxpayer, and then only if the taxpayer--

   (1)  on or before the time his notice of appeal is filed <u>has filed with the Tax Court a bond in a sum fixed by the Tax Court not exceeding double the amount of the portion of the deficiency</u> in respect of which the notice of appeal is filed, and with surety approved by the Tax Court, conditioned upon the payment of the deficiency as finally determined, together with any interest, additional amounts, or additions to the tax provided for by law * * *.  [Emphasis added.]

That is, assessment and collection of a deficiency determined by the Tax Court are <u>not</u> stayed unless the taxpayer files a bond.

See Rule 192; <u>Kevin P. Burke v. Commissioner</u>, 124 T.C. 189, 191 n.4 (2005); <u>Schroeder v. Commissioner</u>, T.C. Memo. 2005-48.

Mr. Burke did not file a bond with this Court. Consequently, assessment and collection were not stayed by section 6213(a) beyond the ninetieth day, see sec. 7483, after the Tax Court's entry of decision in Mr. Burke's deficiency case on January 18, 2006. That is, the IRS was entitled to assess the tax as early as April 18, 2006. As a result, the IRS's assessment of tax and interest on July 21, 2006, and its subsequent issuance of notice and demand to Mr. Burke on or before September 19, 2006, were not premature. Pursuant to section 6651(a)(3), the failure-to-pay addition began to accrue 21 days after that notice and demand--i.e., by October 10, 2006-- notwithstanding the pendency of Mr. Burke's appeal.

3. <u>Mr. Burke Did Not Have Reasonable Cause for Failing To Pay His 1998 Tax Liability After Notice and Demand</u>

Mr. Burke did not pay the assessed tax and interest within 21 days of notice and demand. The mandatory language of section 6651(a)(3) provides: "unless it is shown that such failure is due to reasonable cause and not to willful neglect, there <u>shall</u> be added" the failure-to-pay addition to tax. (Emphasis added.)

Congress used identical language for the three additions to tax imposed by section 6651; i.e., those additions apply "unless it is shown that such failure is due to reasonable cause and not

due to willful neglect." Sec. 6651(a)(1), (2), and (3). The Internal Revenue Code does not define either "willful neglect" or "reasonable cause". In the context of the failure-to-<u>file</u> addition to tax under section 6651(a)(1), the Supreme Court explained: (i) that to escape an addition under section 6651, the taxpayer must prove "both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause'", <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985) (quoting section 6651(a)(1)); and (ii) that "as used here, the term 'willful neglect' may be read as meaning a conscious, intentional failure or reckless indifference", <u>id.</u>

As for reasonable cause for a failure to <u>pay</u> (relevant here), section 301.6651-1(c)(1), Proced. & Admin. Regs., provides, in relevant part:

> A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either <u>unable to pay</u> the tax or would suffer an <u>undue hardship</u> * * * if he paid on the due date. [Emphasis added.]

That is, the regulation speaks only of reasonable cause arising from an inability to pay, but Mr. Burke does not contend that he was unable to pay the tax without suffering undue hardship.[12]

---

[12]In correspondence with respondent's counsel, Mr. Burke variously stated that "Petitioner has maintained throughout[:] the present dispute is not over his ability to pay the subject penalty" and "there is no dispute over the ability to pay". In a
(continued...)

Rather, Mr. Burke contends that the IRS erred by considering only his ability to pay the tax when it was demanded. He argues that section "301.6651 of the Regulations does not purport to be an exclusive list of situations in which a failure to pay is due to 'reasonable cause' and not 'willful neglect'" (quoting East Wind Indus., Inc. v. United States, 196 F.3d 499, 514 n.1 (3d Cir. 1999) (Stapleton, J., dissenting)). Respondent contends that, under the regulation, a taxpayer's financial ability to pay is the only relevant factor in evaluating reasonable cause for a failure to pay, and respondent argues that in East Wind the Court of Appeals adopted a facts-and-circumstances test that requires a finding of financial hardship as a predicate to finding reasonable cause for a failure to pay.

We need not decide whether ability to pay is the exclusive ground for proving reasonable cause for failing to pay, because in any event the only alternative ground that Mr. Burke proffers cannot support a finding of reasonable cause for his failure to pay. Mr. Burke contends that he had reasonable cause not to pay because, when the IRS issued the notice and demand for payment, he was appealing our decision that he was liable for tax. He

---

12(...continued)
conference call with the Court to resolve a discovery dispute, the IRS withdrew its motion to show cause because Mr. Burke affirmed that he would not contend that he was unable to pay the tax when it was due or that paying on the due date would have imposed an undue hardship. See supra note 4.

maintains that because he was prosecuting a good-faith appeal of our adverse decision, as was his right, he should not be liable for the failure-to-pay addition.

However, as is discussed supra, the law is clear that assessment and collection are stayed during the appeal of a decision of this Court only if the taxpayer files a bond on or before the date he files his appeal.  Sec. 7485(a); Schroeder v. Commissioner, supra.  Mr. Burke did indeed have the right to appeal; but the IRS just as surely had the right to collect if he failed to file a bond.  The idea that his appeal somehow deprived the IRS of its right to assess and collect the liability--or somehow excused his obligation to pay--is mistaken as a matter of law, and it does not provide reasonable cause for his failure to pay.  We need not decide whether, in some circumstances, ignorance of the law might excuse the ignorant and unwitting taxpayer from liability for the addition under section 6651(a)(3), since this case involves an experienced tax lawyer well able to determine his rights and obligations under section 7485(a).

4.  The Government Is Not Equitably Estopped From Imposing the Section 6651(a)(3) Addition to Tax

Mr. Burke asserts that the IRS should not be allowed to impose the section 6651(a)(3) addition to tax because the IRS decided not to impose any penalties during the examination or to

pursue penalties in <u>Burke I</u>, and he relied on statements to that effect. His contention cannot be sustained.

Equitable estoppel is a judicial doctrine that precludes a party from denying his own acts or representations which induced another to act to his detriment. "Estoppel is applied against the Commissioner 'with utmost caution and restraint.'" <u>Hofstetter v. Commissioner</u>, 98 T.C. 695, 700 (1992) (quoting <u>Estate of Emerson v. Commissioner</u>, 67 T.C. 612, 617 (1977)). It is well established that the unauthorized acts of its agents cannot estop the Government. <u>Sanders v. Commissioner</u>, 225 F.2d 629, 634 (10th Cir. 1955), affg. 21 T.C. 1012 (1954). It is equally well settled that the IRS cannot be estopped from correcting a mistake of law, even where a taxpayer may have relied to his detriment on that mistake. <u>Norfolk S. Corp. v. Commissioner</u>, 104 T.C. 13, 59-60 (1995), affd. 140 F.3d 240 (4th Cir. 1998). An exception exists only in the rare case where a taxpayer can prove he would suffer an "unconscionable injury" because of that reliance. <u>Id.</u> at 60.

A taxpayer must show the following before equitable estoppel applies against the Government: (1) a false representation or wrongful, misleading silence by the Government; (2) an error by the Government in a statement of fact and not in an opinion or statement of law; (3) the taxpayer's ignorance of the true facts; (4) the taxpayer's reasonable reliance on the Government's acts

or statements; and (5) adverse effects suffered by the taxpayer resulting from the Government's acts or statements. <u>Wilkins v. Commissioner</u>, 120 T.C. 109, 112 (2003). Thus, equitable estoppel requires a finding that the taxpayer suffered a detriment because of his reliance on the representations of the Government. <u>Id.</u>

Mr. Burke asserts that statements in the examining officer's activity record from the examination of his 1998 return justify abating the failure-to-pay addition to tax. In an entry dated December 13, 2001, the examining agent's manager apparently noted: "Concur - no <u>fraud penalty</u> or <u>section 6662 penalty</u> due to F8082 disclosure. No penalties apply." (Emphasis added.) The reason that the examination personnel of the IRS asserted against Mr. Burke no fraud penalty under section 6663(a) and no accuracy-related penalty under section 6662 was stated in that entry-- i.e., "F8082 disclosure"--and that reason does not apply to the failure-to-pay addition.

As the manager tersely noted, Mr. Burke had filed a Form 8082 to inform the IRS of the inconsistency between his reporting zero as his distributive share of partnership income on his individual income tax return and the partnership's reporting $121,000 as his distributive share on its partnership return. Mr. Burke's position in <u>Burke I</u> was that because the income reported on his Schedule K-1, Partner's Share of Income, Credits, Deductions, Etc., was not actually distributed to him but rather

was held in escrow because of a dispute between him and his partner, he was not required to report his distributive share as income. We held that he was taxable on his distributive share, whether distributed or not, and the Court of Appeals for the First Circuit affirmed. He was ultimately shown to be wrong on that issue--but he had clearly flagged the issue on his return, and for that reason he avoided any penalty on his <u>reporting</u> of his income on his return.

An accuracy-related penalty is imposed on substantial understatements of income tax, pursuant to section 6662(a) and (b)(2). In determining whether an understatement is substantial, the amount of the understatement is reduced by any portion attributable to an item if--

> (I) the relevant facts affecting the item's tax treatment are <u>adequately disclosed</u> in the return or in a statement attached to the return, and
>
> (II) there is a <u>reasonable basis</u> for the tax treatment of such item by the taxpayer.

Sec. 6662(d)(2)(B)(ii) (emphasis added).

A fraud penalty is imposed by section 6663(a), which provides:

> If any part of any underpayment[13] of tax required to be shown on a return is <u>due to fraud</u>, there shall be added to

_____

[13]Under section 6664(a), the difference between the tax imposed by the Code and a lesser amount of tax that the taxpayer shows on his return is an "underpayment". Under this definition, it is the under-<u>reporting</u> of the liability that gives rise to an "underpayment".

> the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud. [Emphasis added.]

Section 6664(c)(1) provides an exception to the penalties under sections 6662 and 6663 "if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion."

The IRS did not determine any penalty in the notice of deficiency and did not assert any penalty in Mr. Burke's prior deficiency case, apparently because the IRS concluded (i) that there was a "substantial basis" for Mr. Burke's inconsistent position, (ii) that his position was "adequately disclosed" on Form 8082, (iii) that Mr. Burke's underpayment was not "due to fraud", and/or (iv) that Mr. Burke had "reasonable cause" and "acted in good faith" when he under-reported his tax liability. While for purposes of this case we assume that such conclusions were warranted, those conclusions do not provide a basis for Mr. Burke to avoid the failure-to-pay addition.

Mr. Burke now alleges that he relied upon: (1) the IRS examining agent's statement regarding the accuracy-related penalty; (2) the IRS's decision not to determine such a penalty in the notice of deficiency or to pursue any penalties in his deficiency case; (3) the Court's not imposing penalties in Burke I; and (4) the IRS's failure to provide him notice that it was changing its position relative to penalties. He argues that

the IRS should be estopped from imposing the failure-to-pay addition to tax, i.e., that the IRS's statements and his reliance on them foreclosed this addition to tax.

The section 6651(a)(3) addition to tax, however, was not imposed and could not have been imposed until after the decision in Burke I.  See Commissioner v. McCoy, 484 U.S. 3, 7 (1987). The IRS examining agent made his note on December 13, 2001; we entered our decision in Burke I on January 18, 2006; and the IRS assessed tax and interest on July 21, 2006, and issued the notice and demand no later than September 19, 2006.  The IRS examining agent's statement in 2001 that the accuracy-related penalty would not apply to Mr. Burke's 1998 deficiency was not a false representation or an error in a statement of fact; it was instead a correct statement that was borne out in the IRS's subsequent non-imposition of such a penalty.  Nor was the agent's 2001 statement a wrongful, misleading silence.  It was an appropriate silence, since the question whether a failure-to-pay addition would ever be due depended entirely on future events.[14]

---

[14]If the IRS examining agent had informed Mr. Burke during the examination that he was somehow inoculated against all present and future penalties and additions to tax for tax year 1998, including the section 6651(a)(3) failure-to-pay addition to tax, such a statement would have been an erroneous representation of law, not of fact.  The IRS ordinarily will not be estopped from retroactively correcting a mistake of law.  Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 60-61 (1995), affd. 140 F.3d 340 (4th Cir. 1998).

If Mr. Burke failed to pay the assessed tax and interest after notice and demand because the IRS had earlier told him that it would not penalize his reporting position, then he inferred a wild non sequitur.  A taxpayer who understates his tax liability in complete innocence is nonetheless obliged to pay his actual tax liability; and if he fails to do so after notice and demand, his failure to pay is not excused by the innocence of his prior mistake.  If an IRS agent informs a taxpayer that he will not be held liable for a fraud penalty, the taxpayer has no reason to infer that he need not pay the tax subsequently assessed or that he will thereafter be immune from failure-to-pay additions to tax.

But Mr. Burke may be making a contention slightly more subtle than that.  He may be contending that the "substantial basis", "reasonable cause", and "good faith" conclusions implicit in the IRS agent's no-penalty decision laid the predicate for estoppel in the failure-to-pay context.  Arguably, the IRS had implicitly ruled, for purposes of penalties, that Mr. Burke's reporting position had "reasonable cause" (under section 6664(c)); and Mr. Burke may be contending that he was thereafter entitled to rely on that ruling, so that the Government ought to be estopped from denying "reasonable cause" under section 6651(a)(3) for his non-payment of the tax.

If that is his contention, then it fails. "Reasonable cause" for erroneously <u>reporting</u> one's tax liability in the first instance (for purposes of section 6664(c)) is a very different thing from "reasonable cause" for not <u>paying</u> one's liability (for purposes of section 6651(a)(3)) even after the error has been challenged, the tax has been assessed, and payment has been demanded. Mr. Burke's mistake on his tax return might be attributed to reasonable cause; but once the deficiency in his tax resulting from that error was assessed, a continuing refusal to pay the tax cannot be excused by the prior mistake. Consequently, the possibility that his <u>reporting</u> error had reasonable cause did not give him reason to delay <u>payment</u> when payment was required. A taxpayer may certainly challenge the IRS's audit position in this Court, and he may even be able to delay paying the liability--but only to the extent and in the manner the Code provides. When Mr. Burke lost before the Tax Court but still failed to pay (or to file an appeal bond) because he disagreed with the IRS and the Tax Court and wanted to litigate the matter on appeal, then his loss of that appeal meant not only liability for the tax but also liability for the addition to tax for failure to pay.

Mr. Burke has not demonstrated any misconduct by the IRS. He has not shown that any injury (let alone an "unconscionable injury") resulted from his reliance on representations (let alone

misrepresentations) made by IRS agents.  See <u>Norfolk S. Corp. v.</u> <u>Commissioner</u>, 104 T.C. at 61 (with no evidence of false representations by the IRS, actions of IRS examining agents who did not address the specific issue in suit could not have misled a reasonable taxpayer).  Mr. Burke has not established the elements required to invoke equitable estoppel, and his liability for the addition to tax results from his failure to comply with the law.  Consequently, we do not conclude that it is unfair for the IRS to impose the addition to tax required by the statute.

The section 6651(a)(3) addition to tax was properly imposed; Mr. Burke has not shown that his failure to pay was due to reasonable cause and not to willful neglect; and the Government is not estopped from determining this addition to tax. Therefore, Mr. Burke is liable for the addition to tax under section 6651(a)(3).

III. <u>The Office of Appeals Did Not Abuse Its Discretion</u>

The appeals officer verified that the IRS met the requirements of applicable law and administrative procedure in assessing and demanding payment for Mr. Burke's 1998 liability, issuing the notice of intent to levy, and providing him with the CDP hearing.  The appeals officer considered the issues Mr. Burke raised but was unable to consider any collection alternative because Mr. Burke did not make an actual offer or return a signed installment agreement and because he did not provide the

financial information required to support any collection
alternative.[15]  The appeals officer considered Mr. Burke's
challenge to the section 6651(a)(3) addition to tax and
considered his abatement request.  He determined that Mr. Burke
did not qualify for abatement.  Finally, he determined that
collection by levy properly balanced intrusiveness and
efficiency--a matter to which Mr. Burke has never raised any
dispute.

We conclude that the Office of Appeals did not abuse its
discretion in sustaining the notice of intent to levy, and we
hold that collection by levy may proceed.

IV.  No Section 6673 Penalty Will Be Imposed

Respondent has moved the Court to impose on Mr. Burke a
penalty under section 6673(a)(1), which authorizes the Tax Court
to require a taxpayer to pay to the United States a penalty not

---

[15]Mr. Burke and the appeals officer discussed an installment
agreement.  The appeals officer prepared an agreement and sent it
to Mr. Burke, who made the $92,000 initial payment that it called
for but did not sign and return the agreement.  Mr. Burke
expressed interest in an installment agreement only if it did not
include the section 6651(a)(3) addition to tax.  The appeals
officer concluded that the IRS would not enter such an agreement
for only a portion of the tax debt.  Mr. Burke refused to enter
an agreement that included the addition to tax, and he did not
submit a written installment agreement or the financial
information required for IRS consideration of such an agreement.
We have consistently held that the Office of Appeals does not
abuse its discretion by not considering a collection alternative
the taxpayer does not submit or support with required financial
information.  See Kendricks v. Commissioner, 124 T.C. 69, 79
(2005); Cavazos v. Commissioner, T.C. Memo. 2008-257; Prater v.
Commissioner, T.C. Memo. 2007-241.

in excess of $25,000 whenever it appears that proceedings have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceeding is frivolous or groundless. A taxpayer's position is frivolous or groundless if it is "'contrary to established law and unsupported by a reasoned, colorable argument for change in the law.'" Williams v. Commissioner, 114 T.C. 136, 144 (2000) (quoting Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986)).

However, the imposition of penalties under section 6673 is committed to the discretion of the Court. See Muhich v. Commissioner, T.C. Memo. 1999-192, affd. 238 F.3d 860 (7th Cir. 2001). Although Mr. Burke's contentions as to the section 6651(a)(3) addition lack merit, we will not impose a penalty in this case. Mr. Burke disclosed very clearly on his 1998 return the item that gave rise to the tax liability underlying this case. During the audit Mr. Burke was cooperative with the IRS. During the subsequent CDP process and before commencing this litigation, Mr. Burke made a $92,000 payment that almost completely covered his liability for tax and interest, leaving unpaid only a small amount of accrued interest and the section 6651(a)(3) addition that he wanted to challenge. His principal contention in that challenge--i.e., that the pendency of his appeal should excuse his liability for the failure-to-pay addition--is very wrong, but we do not believe that, in view of

all the circumstances, it warrants a penalty under section 6673(a).  Respondent's motion will be denied.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.